**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

|  |  |  |
|---|---|---|
| | : | |
| SIERRA CLUB, ET AL. | : | |
| | : | Case No. 2:08cv865 |
| Plaintiffs, | : | |
| | : | |
| -vs- | : | Judge George C. Smith |
| | : | Magistrate Judge Mark R. Abel |
| CHRISTOPHER KORLESKI | : | |
| Director, Ohio Environmental | : | |
| Protection Agency | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiffs move this Court for an order granting summary judgment on Count 1 of their Complaint – Defendant Korleski's (the "Director") violation of his Clean Air Act[1] duty to enforce the best available technology ("BAT") requirements of the federally-approved Ohio State Implementation Plan ("Ohio SIP"). There is no dispute that since at least December 1, 2006, the Director has failed and refused to apply BAT to new and modified sources that have the potential to emit less than ten tons per year of National Ambient Air Quality Standards ("NAAQS") pollution. Summary judgment is proper as a matter of law on Count 1 because the following facts and legal conclusions are not in genuine dispute:

---

[1] 42 U.S.C. § 7401, *et seq.*

1

1.      That the Director has a duty under the Clean Air Act to enforce and implement the federally-approved Ohio SIP;

2.      The federally-approved Ohio SIP requires that new and modified sources that have the potential to emit less than ten tons per year of NAAQS pollution employ BAT to control air emissions; and,

3.      The Director, *since at least December 1, 2006 and continuing to date*, has failed and refused to implement and enforce the federally-approved BAT requirements for such under ten ton sources; instead, he has followed a non-federally approved regulation that exempts such sources (the "BAT Exemption") and contravenes the federal requirement.

Based on the above facts and conclusions, which are established through the Director's sworn discovery responses, his Answer (Doc. 5), and the law set forth in the attached Memorandum in Support[2], it is undisputed that the Director has for over two years illegally ceased implementing and enforcing BAT against new and modified under ten ton sources of NAAQS pollution.  Thus, under the Clean Air Act and case law interpreting the Clean Air Act, the Director has violated and is in violation of an emission standard or limitation (here, the BAT requirements) and is, thus, liable under the Clean Air Act.

Therefore, Plaintiffs request that this Court enter an order granting summary judgment on Count 1 of the Complaint and:

1.  Declaring that the Director's failure to enforce and implement the Ohio SIP violates the Clean Air Act, 42 U.S.C. § 7410;

2.  Declaring that the Director's failure to enforce and implement the Ohio SIP violates the Clean Air Act, 42 U.S.C. § 7416;

3.  Declaring that the BAT Exemption (i.e., the regulatory exemption from BAT for new

---

[2] Plaintiffs incorporate the Memorandum in Support and Kravitz Affidavit and attached exhibits by reference.

and modified under ten ton sources of NAAQS pollution) adopted and promulgated by Ohio EPA on November 20, 2006 and which became effective on December 1, 2006 violates the Ohio SIP and the Clean Air Act;

4. Declaring that the Ohio General Assembly's August 3, 2006 amendment of Ohio Revised Code Section 3704.03, containing a statutory BAT exemption for new and modified under ten ton sources of NAAQS pollution, is preempted by the Clean Air Act, 42 U.S.C. § 7416 and 42 U.S.C. § 7410, and by the Ohio SIP;

5. Requiring the Director to implement and enforce O.A.C. § 3745-31-05 contained in the U.S. EPA approved Ohio SIP (i.e., to enforce BAT requirements against new and modified under ten ton sources of NAAQS pollution);

6. Enjoining the Director from further implementation of the BAT Exemption that contravenes the federally-approved Ohio SIP; and,

7. Awarding such other relief, including interim fees and costs, as may be necessary, just, or appropriate under the circumstances.

Respectfully Submitted,

s/ D. David Altman
D. David Altman (0021457)
Brett A. Kravitz (0069101))
Justin D. Newman (0080968)
D. DAVID ALTMAN CO., L.P.A.
15 East 8th Street, Suite 200W
Cincinnati, Ohio 45202
(513) 721-2180
daltman@one.net
*Trial Attorneys for the Plaintiffs*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

There is no dispute that the four citizen suit plaintiffs met the prerequisites to file a federal lawsuit to enforce the federal Clean Air Act (42 U.S.C. § 7401 to § 7671 the "CAA") by requiring the Director to comply with his federal duty to implement and enforce the federally-approved Ohio State Implementation Plan (the "Ohio SIP"). Since Plaintiffs met the prerequisites and have demonstrated standing to bring this action[3], they can "stand in the shoes of the U.S. EPA" to seek such enforcement.[4] Like the U.S. EPA Administrator, the Plaintiffs seek neither individual tort payment nor other monetary reward. Their goal is to enforce the federal law so that Plaintiffs, other Ohio citizens, and downwind citizens in other states will benefit from the enhancement of air quality secured by full implementation of the CAA. The order Plaintiffs seek would require the Director to resume doing what Ohio EPA has done for over 30 years[5] – assuring that new and modified sources that have the potential to emit less than ten tons per year of NAAQS pollution or precursors to NAAQS pollution employ BAT[6]. (These sources are also referred to herein as "new and modified under ten ton sources of NAAQS pollution.")

The facts proving the Director's failure to enforce Ohio's BAT requirements against new and modified under ten ton sources of NAAQS pollution are not in dispute. Additionally, the importance of the BAT program to the federally-approved state plan is not in dispute: "BAT [is]

---

[3] There is no genuine dispute that the Sierra Club has members directly affected by the alleged SIP violations and that the three individual plaintiffs breathe the air and reside in a non-attainment area – Hamilton County, Ohio.
[4] See e.g., *Sierra Club v. Chevron USA, Inc.*, 834 F.2d 1517 (9th Cir. 1987).
[5] The BAT program has been in Ohio's SIP "since the early days of the [Ohio EPA's] existence." (See Exhibit 1 to the Kravitz Affidavit, April 26, 2005 letter by then Director of Ohio EPA, Joseph P. Koncelik).
[6] Best available technology

a strategy to meet Federal air standards" and a "statewide program that covers thousands of individual sources." (See Exhibit 1 to the Kravitz Affidavit, April 26, 2005 letter by then Director of Ohio EPA, Joseph P. Koncelik). As then Director Joseph P. Koncelik aptly stated, "BAT is good for air quality." (*Id*). Yet, about one and one-half year after making those statements, the Director ceased implementing and enforcing a key component of that program in direct violation of the CAA, e.g., 42 U.S.C. § 7416, which prohibits the adoption or enforcement by a state of any standard less stringent than a standard in the federally-approved SIP. This calculated breach of law requires an immediate remedy. Case law makes clear that this Court may and should enjoin such violations.

## II. BACKGROUND AND STATEMENT OF UNDISPUTED FACTS SHOWING PLAINTIFFS' ENTITLEMENT TO SUMMARY JUDGMENT.

### A. The Clean Air Act

In passing the CAA, Congress found that air pollution in the United States "…[had] resulted in mounting dangers to the public health and welfare, including injury to agricultural crops and livestock, damage to and deterioration of property, and hazards to air and ground transportation…" 42 U.S.C. § 7401(a)(2). Accordingly, a primary goal of the CAA is to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and productive capacity of its population." 42 U.S.C. § 7401(b).

The CAA required the U.S. EPA to establish National Ambient Air Quality Standards ("NAAQS") for air pollutants that endanger public health and/or the public welfare. *See* 42 U.S.C. § 7409(b). More specifically, the CAA required the U.S. EPA Administrator to promulgate NAAQS for each of the six identified criteria pollutants: ozone, particulate matter, carbon monoxide, sulfur dioxide, nitrogen dioxide, and lead. 36 Fed. Reg. 8186 (1971). NAAQS are designed to assure "an adequate margin of safety…to protect the health," and to assure the

2

protection of "the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutant in the ambient air." 42 U.S.C. § 7409(b)(1) and (2).

The CAA requires the states to submit state implementation plans ("SIPs") that include the measures (i.e., standards and controls) necessary to provide for the "implementation, maintenance, and enforcement" of the NAAQS. 42 U.S.C. § 7410(a)(1). U.S. EPA reviews and approves or disapproves any SIP submittal. *Id*. Once approved, the SIP becomes enforceable as federal law by the federal government or by private citizens if certain prerequisites are met. 42 U.S.C. §§ 7413, 7604(a) and (f).

*Once each state's SIP is approved, the CAA requires that state to enforce and implement each provision of the approved SIP*. First, under 42 U.S.C. § 7416, states are prohibited from *adopting* or *enforcing* any emission standard or limitation that is *less stringent* than an emission standard or limitation under an approved implementation plan. Second, under 42 U.S.C. § 7410, each state has a duty to ensure adequate implementation of its federally-approved SIP and to ensure that the implementation of the approved plan "is not prohibited by any provision of Federal or State law." 42 U.S.C. § 7410(a)(2)(E). Further, 42 U.S.C. § 7413(a)(2) makes clear that states have a duty to enforce the federally-approved SIP.

If a state seeks to revise its SIP, that state is required under federal regulations to submit any proposed revision of any SIP regulation to U.S. EPA. 40 C.F.R. Part 51, App. V; 40 C.F.R. § 51.104. The state is also required to submit a showing that the SIP revision proposal will not interfere with achievement of the NAAQS and other requirements (i.e., "technical support") to U.S. EPA. 40 C.F.R. Part 51, App. V, 2.2. The state must submit the proposed revision and technical support for approval no later than 60 days after the regulation's adoption by that state. 40 C.F.R. § 51.104. U.S. EPA reviews any SIP revision proposal and approves or disapproves

3

any such revision proposal. 42 U.S.C. § 7410; 40 C.F.R. § 51.105. *Until the revision is approved, the State is required to enforce and implement the existing, federally-approved SIP.* See e.g., 42 U.S.C. §§ 7416, 7410, 7413; 40 C.F.R. § 51.105; and case law cited below.

### B. Procedural Posture

Plaintiffs provided notice of their intent to sue under the CAA, 42 U.S.C. § 7604, to the Director on May 21, 2008. (Director's Answer ¶ 59). Plaintiffs filed their Complaint on September 16, 2008, stating that the Director has violated and is in violation of the CAA because of his failure: (1) to enforce and implement the Ohio SIP, namely BAT requirements for new and modified under ten ton sources of NAAQS pollution; (2) comply with the anti-backsliding provisions of the CAA; (3) timely request a revision of the Ohio SIP; and (4) to submit the technical support required for revision of the Ohio SIP. (Doc. 2).

On November 17, 2008, the Director filed a Motion to Dismiss the four counts of the Complaint or, in the alternative, for the Court to exercise its discretion to abstain under the *Burford* doctrine. (Doc. 4). This Court denied the Director's Motion to Dismiss in its entirety. (February 17, 2009 Order, Doc. 17). The Court found that: (1) the BAT requirements are emission standards or limitations under the CAA because BAT is a "standard of performance" in effect under the Ohio SIP; (2) the Complaint met pleading standards because it alleged that the Director was in violation of an emission standard or limitation because of his failure to enforce and implement the BAT requirements, as the Ohio SIP mandates; and (3) *Burford* abstention was inappropriate because the case "turns on federal law and does not concern a disputed issue of state law." (February 17, 2009 Order, Doc. 17 p. 7-10).

The parties have exchanged written discovery.[7] Plaintiffs now seek summary judgment on Count 1 of their Complaint (1) because of the Director's admissions in his Answer (Doc. 5) and in written discovery and (2) because CAA case law is clear that state environmental agencies are in violation of an emission standard or limitation when they fail to implement and enforce their federally-approved SIP, as the Director has admittedly done here. Sixth Circuit case law and citizen suit case law involving violations of a SIP by a state agency demonstrate that an injunction is, thus, proper.

### C.  Undisputed Facts Showing the Director's CAA violations.

The Ohio SIP was first approved by the U.S. EPA on May 31, 1972 and incorporated by reference into the Code of Federal Regulations at 40 C.F.R. § 52.1870.  See 40 C.F.R. § 52.1870; (Answer at ¶ 24). The federally-approved Ohio SIP includes the requirement that new or modified air contaminant sources employ BAT[8] to reduce air emissions. (Answer at ¶ 28; Kravitz Affidavit Exhibit 2). As such, under the federally-approved Ohio SIP, BAT is required for new or modified sources that have the potential to emit less than ten tons per year of NAAQS pollution or precursors to NAAQS pollution. (Answer at ¶¶ 28, 30; Kravitz Affidavit Exhibit 2). Further, under O.A.C.  § 3745-31-05(A)(3), as it exists in the approved SIP, before a permit to install ("PTI") may be issued under the federally-approved Ohio SIP, the Director must determine that the installation or modification and operation of the air contaminant source will employ BAT. (Answer at ¶ 28).

---

[7] While Plaintiffs are still seeking discovery to which they are entitled, the record is more than sufficient to justify summary judgment on Count 1, set forth herein.

[8] Under the Ohio SIP, "BAT" means "any combination of work practices, raw material specifications, throughput limitations, source design characteristics, an evaluation of the annualized cost per ton of air pollutant removed, and air pollution control devices that have been previously demonstrated to the director of environmental protection to operate satisfactorily in [Ohio] or other states with similar air quality on substantially similar air pollution sources." O.A.C. § 3745-31-01(T). BAT is an emission standard or limitation because it is, e.g., a control and standard of performance in an approved SIP that limits emissions of NAAQS pollutants.

On August 3, 2006, the Ohio General Assembly passed amended R.C. § 3704.03, which contravenes the Ohio SIP by exempting new and modified under ten ton sources of NAAQS pollution from BAT requirements. See R.C. § 3704.03(T).  On November 20, 2006, Ohio EPA promulgated revised O.A.C. § 3745-31-05(A)(3) that exempts new or modified sources that have the potential to emit less than ten tons per year of NAAQS pollution or precursors to NAAQS pollution from employing BAT requirements (the exemption in the revised rule is the "BAT Exemption").[9] (Answer at ¶ 41). The revised rule with the BAT Exemption became effective under Ohio law on December 1, 2006. (Answer at ¶¶ 2, 30, 49). Since December 1, 2006, Ohio EPA has implemented the revised rule with the BAT Exemption against new or modified sources that have the potential to emit less than ten tons per year of NAAQS pollution. (Answer at ¶¶ 30, 49; Director's Answer to Request for Admission No. 1, attached at Exhibit 3 to the Kravitz Affidavit).

The Director's admissions also show that he ceased enforcing and implementing the BAT requirements (i.e., applying the BAT Exemption) against such sources without revising the Ohio SIP, i.e., without obtaining U.S. EPA approval. The Director did not submit a SIP revision proposal until January 18, 2008, even though he began applying the BAT Exemption – without federal approval – on December 1, 2006. (Answer at ¶¶ 43, 49). Further, on June 5, 2008, the U.S. EPA found the Director's proposed SIP revision to be incomplete. (Answer at ¶ 47). Additionally, the U.S. EPA found that it could not process the incomplete submittal. (Answer at

---

[9] The BAT Exemption was originally found at O.A.C. § 3745-31-05(A)(3)(b). Effective June 30, 2008, the  BAT Exemption is found at O.A.C. § 3745-31-05(A)(3)(ii). The BAT Exemption applies to new or modified sources installed on or after August 3, 2006 that have the potential to emit,  "taking into account air pollution controls installed on the source, less than ten tons per year of emissions of an air contaminant or precursor of an air contaminant for which a national ambient air quality standard has been adopted under the Clean Air Act." *The BAT Exemption is less stringent and conflicts with O.A.C. § 3745-31-05, as it exists in the Ohio SIP, which requires BAT on the sources that Ohio EPA has illegally exempted.* (See Exhibit 2 to the Kravitz Affidavit, a U.S. EPA document showing the text of O.A.C. §  3745-31-05 as it exists in the approved Ohio SIP).

¶ 47). The incomplete submittal lacked the factual demonstration that the proposed revision would not interfere with the achievement of ambient air quality standards and comply with the other requirements of 40 C.F.R. Part 51, App. V. (Director's Answer to Request for Admission No. 2 from the Ohio ERAC case, attached at Exhibit 3 to the Kravitz Affidavit).[10] Since receipt of the June 2008 letter, the Director has not submitted a new proposed SIP revision for the BAT Exemption to U.S. EPA. (Director's Answer to Request for Admission No. 7, Attached at Ex. 3 to the Kravitz Affidavit).

Further, the U.S. EPA stated that the BAT Exemption was a "relaxation" of the BAT requirements in the federally-approved Ohio SIP. (June 5, 2008 Letter of Cheryl L. Newton of U.S. EPA to Robert Hodanbosi at Ohio EPA, attached at Exhibit 3 to the Kravitz Affidavit).[11] The Ohio SIP, therefore, still requires Ohio EPA to implement and enforce BAT against new and modified under ten ton sources of NAAQS pollution. (See Exhibit 2 to the Kravitz Affidavit). Yet, the Director has exempted such sources from BAT for over two years. (Answer at ¶¶ 30, 49; Director's Answer to Request for Admission No. 1, attached as Exhibit 3 to the Kravitz Affidavit).

Counties in and around Cleveland, Cincinnati, Akron and Columbus are in non-attainment for certain NAAQS pollutants.[12] (Answer at ¶ 56). The potential health and environmental effects of NAAQS are well known and include: (1) carbon monoxide (poisonous

---

[10] The Director's ERAC Admissions were admitted to be true and accurate in the Director's Answer to Request for Admission No. 11 in the case at bar and were admitted to be authentic in the Director's Answer to Request for Admission No. 15. Both sets of admissions are included in Ex. 3 to the Kravitz Affidavit. See also, June 5, 2008 Letter from U.S. EPA, attached at Exhibit 3 to the Kravitz Affidavit.

[11] The Director admitted that the June 5, 2008 letter from U.S. EPA was authentic in his Answer to Request for Admission No. 16.

[12] Each state must designate its areas where air quality is better or worse than the NAAQS for each criteria pollutant. 42 U.S.C. § 7407(d). An area not achieving the NAAQS is a "nonattainment" area for that pollutant. *Id*.

at high levels, cardiovascular effects, and central nervous system effects); (2) particulate matter (contributes to increased respiratory problems, decreased lung function, aggravates asthma, and premature death for people with heart or lung disease); (3) nitrogen dioxide (triggers serious respiratory problems, contributes to ozone formation, reacts to form toxic chemicals); (4) lead (adversely affects the nervous system, kidney function, immune system, reproductive and developmental systems, and cardiovascular system); (5) sulfur dioxide (contributes to respiratory illness, aggravates existing heart and lung disease, and can cause premature death); and (6) ozone (contributes to increased susceptibility to respiratory illnesses, permanent lung damage, and the aggravation of asthma). (See Exhibit 4 to the Kravitz Affidavit, U.S. EPA Fact Sheets for criteria pollutants).[13]

### III. ARGUMENT

### A. Standard of Review

Under FED. R. CIV. P. 56(c), summary judgment must be entered when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(c). Although courts draw all reasonable inferences in favor of the non-moving party, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the finder-of-fact could reasonably find for the non-moving party. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Evidence that is merely colorable or not

---

[13] The Court can take judicial notice of Exhibit 4 to the Kravitz Affidavit because the information in these U.S. EPA fact sheets is "not subject to reasonable dispute", i.e., the facts are "capable of ready and accurate determination." See Rule 201(b) of the Federal Rules of Evidence. See also, 2004 Direct Final Rule, 69 Fed. Reg. 21731; See 2006 Final Response to Remand, 68 Fed. Reg. 614, 615 (outlining the potential health and environmental effects of ozone); See also, 2006 Final Rule, 71 Fed. Reg. 61144, at 61151-52; 2006 Proposed Rule, 71 Fed. Reg. 2626-2641 (outlining the potential health and environmental effects of particulates).

8

significantly probable does not present a "genuine issue" of material fact and summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249-250. "A fact is material if it will 'affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted.'" *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 138 (6th Cir. 1993), quoting *Liberty Lobby,* 477 U.S. at 252.

Plaintiffs are entitled to judgment on Count 1 of the Complaint because of the Director's clear violations of the CAA through his failure to enforce and implement the BAT requirements as mandated in the Ohio SIP. Furthermore, this Court should issue an order enjoining the Director to comply with the Clean Air Act and the federally-approved Ohio SIP.

## B. Plaintiffs Are Entitled to Summary Judgment on Count 1 and, at the very least, the Declaratory Relief Requested in the Motion.

Under the text of the CAA and federal precedent, it is clear that Plaintiffs are entitled to summary judgment on Count 1 because: (1) BAT is an emission standard or limitation, as this Court has already properly found (Doc. 17); (2) the Director is duty-bound to enforce the federally-approved Ohio SIP; and, (3) the Director has violated and is in violation of an emission standard or limitation by failing to enforce the BAT requirements as required by the federally-approved Ohio SIP.[14] Accordingly, this Court should enter summary judgment on Count 1 and issue an order, at the very least, granting the declaratory relief requested in the Motion.

### 1. BAT is an emission standard or limitation under the CAA.

This Court properly found that BAT meets the definition of an "emission standard or limitation[15] under the [CAA]." (Doc. 17 p. 7). More specifically, this Court found that BAT

---

[14] Count 1 of Plaintiffs' Complaint requires the Plaintiffs to prove that (1) the BAT requirements at issue in this case meet the definition of an "emission standard or limitation" under the CAA and (2) that the Director is in violation of or has violated repeatedly an "emission standard or limitation" (here, BAT). See 42 U.S.C. § 7604(a)(1).
[15] The term "emission standard or limitation under this chapter" is defined broadly:

requirements satisfy the 42 U.S.C. § 7604(f)(1) definition of emission standard or limitation because BAT is "a standard of performance… which is in effect under an applicable implementation plan." (*Id.*)

The Court's analysis is correct under both the text of the CAA and the undisputed record of this case. The CAA defines a standard of performance as "a requirement of continuous emission reduction, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction." 42 U.S.C. § 7602*(l)*. BAT requirements, including "any combination of work practices, raw material specifications, throughput limitations, source design characteristics…and air pollution control devices,"[16] relate to the operation of a source and limit NAAQS emissions from sources. Accordingly, such requirements satisfy the definition of a "standard of performance." Further, there is no dispute that the BAT requirements are in the federally-approved SIP. (Answer ¶ 28; Ex. 2 to the Kravitz Affidavit). Thus, because BAT is a "standard of performance…in effect" under a state implementation plan,

---

For purposes of this section, the term 'emission standard or limitation under this chapter' means –

(1)          a schedule or timetable of compliance, ***emission limitation***, standard of performance or ***emission standard***…or

(4)          ***any other standard, limitation,*** or schedule established under any permit issued pursuant to subchapter V of this chapter or ***under any applicable State implementation plan*** approved by the Administrator, or any permit term or condition, and any requirement to obtain a permit as a condition of operations.

which is in effect under this chapter (including a requirement applicable by reason of section 7418 of this title) ***or under an applicable implementation plan***.

42 U.S.C. § 7604(f)(1),(4) (Emphasis added).

[16] See O.A.C. § 3745-31-01(T).

BAT satisfies the definition of "an emission standard or limitation in effect under this chapter" in 42 U.S.C. § 7604(f)(1).[17]

Further, the Court's ruling is consistent with federal case law interpreting 42 U.S.C. § 7604(f), which holds that an emission standard or limitation is "**any type of control** to reduce the amount of emissions in the air." *Oregon Environmental Council v. Oregon Department of Environmental Air Quality*, 775 F. Supp. 353, 361 (D. Ore. 1991)(emphasis added); *Communities for a Better Environment v. Cenco Refining Company*, 180 F. Supp.2d 1062, 1081 (C.D. Cal. 2001). In Ohio, BAT, as made clear by the regulatory definition[18], is a "control to reduce the amount of emissions into the air." In fact, Ohio EPA's BAT Activity website states that BAT is a "case-by-case determination" of an "emission limit and/or control technique," making clear that BAT satisfies the definition of "emission standard or limitation" set forth in *Oregon Environmental Council* and *Communities for a Better Environment*.[19] (See the Ohio EPA BAT Activity Website, attached at Ex. 3 to the Kravitz Affidavit).

Thus, the BAT requirements are emission standards or limitations under the CAA.

**2. Because the Director has admittedly failed to implement the BAT program as required by the Ohio SIP, there is no genuine issue of material fact that the Director is in violation and has violated an emission standard or limitation; therefore, summary judgment is proper and Plaintiffs are, at least, entitled to declaratory relief.**

---

[17] The Court's determination that BAT is an emission standard or limitation is also proper under 42 U.S.C. § 7604(f)(4). Because BAT is in the Ohio SIP and because BAT limits emissions of NAAQS pollutants, BAT requirements satisfy the statutory definition of a "**limitation...established…under** . . . **[the] applicable State implementation plan approved by the Administrator.**" 42 U.S.C. § 7604(f)(4). Furthermore, BAT is a "standard" established under a SIP approved by the US EPA because BAT is often a standard of technology that a source must employ to control emissions. Thus, BAT is an emissions standard or limitation under U.S.C. § 7604(f)(4).

[18] See O.A.C. § 3745-31-01(T).

[19] Similarly SIP strategies, plans, and SIP commitments designed to control NAAQS pollution have also been found to fit within the definition of an emission standard or limitation. *American Lung Ass'n of New Jersey v. Kean*, 871 F.2d 319 (3d Cir.1989) . Ohio's BAT fits this definition since BAT is a component of Ohio's strategy to control NAAQS pollution and is required under the approved Ohio SIP.

As set forth above, the Director admits that he has failed to implement and enforce BAT requirements against new and modified under ten ton sources of NAAQS pollution since at least December 1, 2006 to the present. The Ohio SIP requires such sources to employ BAT. Therefore, there is no genuine issue of material fact concerning whether the Director has violated and is in violation of the CAA.

As Plaintiffs established in their Opposition to the Motion to Dismiss (Doc. 8), the terms "in violation" and "violated", according to their plain meaning, mean to be "currently breaching a duty" (in violation) and to "have breached a duty" (violated).[20]

Federal case law makes clear that the Director has a "duty" to enforce the federally-approved Ohio SIP. See e.g., *United States v. Ford Motor Co.,* 814 F.2d 1099 (6th Cir.1987) (finding that once a SIP is approved, the state is without power to revise or repeal its provisions without U.S. EPA approval); *Coalition for Clean Air, Inc. v. South Coast Air Quality Management District*, 1999 WL 33842864 at *1,3 (C.D. Cal. Aug. 27, 1999)(finding that "Because the state acquires a 'duty' to implement a SIP which has been approved by [U.S.] EPA, that duty requires implementation…" and that "once the EPA approves a SIP, the state is required to comply with unless and until a replacement SIP is formally approved…"); *American Lung Association*, 871 F.2d at 322 ("SIPs are not merely advisory; once EPA approves a SIP the state is obligated to comply with it.")

The Director's duty arises principally from three CAA provisions. First, under 42 U.S.C. § 7416, the Director has a duty not to enforce or adopt any emission standard or limitation that is *less stringent* than an emission standard or limitation in effect under an approved implementation

---

[20] The terms "in violation" and "violated" are not expressly defined by the CAA. Therefore, under canons of statutory construction, this Court should interpret the terms according to their ordinary, plain meaning and broadly interpret the terms to effectuate the broad remedial purpose of the CAA. See generally, *Fisher v. Perma-Fix of Dayton, Inc.,* 2006 WL 212076, * 5 (S.D. Ohio January 27, 2006). The term "violation" means a "breach…of duty." (Black's Law Dictionary, 6th Edition 1991).

plan. Additionally, under 42 U.S.C. § 7410, the Director has a duty to ensure adequate implementation of the federally-approved SIP and to ensure that there is no provision of State or local law that will prohibit the State from carrying out the approved SIP or any portion of the approved SIP. 42 U.S.C. § 7410(a)(2)(E). Finally, 42 U.S.C. § 7413(a)(2) provides that states have a duty to enforce the approved SIP.

Applying principally Section 7410 and 7416 of the CAA, federal courts have held that state agencies are in violation of the CAA when they breach their duty to implement and enforce provisions of an approved SIP. *See e.g., American Lung Ass'n of New Jersey v. Kean*, 871 F.2d 319; *Kentucky Resources Council, Inc. v. United States Environmental Protection Agency et al.*, 304 F.Supp.2d 920 (W.D.K.Y. 2004)*; Sweat v. Hull,* 200 F. Supp.2d 1162 (D. Ariz. 2001); *Citizens for Pennsylvania's Future v. Mallory*, 2002 WL 31845880 (E.D. Pa. Dec. 18, 2002). For example, district courts have uniformly held that agencies are violating emission standards or limitations when they stop enforcing and implementing vehicle emission programs that are included in and mandated by their SIPs. *Kentucky Resources Council, Inc.,* 304 F.Supp.2d 927-928*; Sweat,* 200 F. Supp.2d at 1170; *Citizens for Pennsylvania's Future v. Mallory*, 2002 WL 31845880 at *12. As the Court stated in *Sweat*, the Arizona agency "was required under the Clean Air Act to implement its [vehicle emissions program] until [US] EPA approved any revision." *Sweat*, 200 F.Supp.2d at 1170. In fact, a state instrumentality is in violation of the CAA when it fails to enforce or implement specific commitments or strategies found in its SIP designed to achieve compliance with the NAAQS. *Coalition for Clean Air, Inc.,* 1999 WL 33842864, * 3-6; *Citizens for a Better Environment v. Deukmejian*, 731 F.Supp. 1448 (N.D. Cal. 1990).

Further, states are required to enforce the existing SIP even if a properly-supported SIP

13

revision proposal is pending before U.S. EPA. This Court properly found: "While it is accurate that the proposed SIP revision be *enforceable*, that does not mean that the state must be presently *enforcing* the revision. (Doc. 17 p. 8)(emphasis in original). The Court's conclusion is correct. *United States Supreme Court* precedent and *Sixth Circuit* precedent make clear that states must continue to enforce the provisions of the approved SIP until US EPA approves the complete revision submittal. See *Gen. Motors Corp. v. United States,* 496 U.S. 530, 540 (1990) ("Both this Court and the Court of Appeals have recognized that the approved SIP is the applicable implementation plan during the time a SIP revision proposal is pending"); *United States v. Ford Motor Co.,* 814 F.2d 1099, 1103 (6th Cir.1987)(if the existing SIP did not remain in effect while a revision was pending, *"'the entire enforcement procedure of the Clean Air Act would be crippled. . . .'* [21] *Instead, [the existing SIP] remains fully enforceable until a revision or variance is approved by <u>both</u> the State and EPA."*)(*emphasis added*); see also, *Coalition for Clean Air, Inc.,* 1999 WL 33842864, *1 ("A principal point for this case is that once the EPA approves a SIP, the state is required to comply with it unless and until a replacement SIP is formally approved.").

Finally, state legislation that conflicts with a federally-approved SIP does not relieve a state of its duty to enforce and implement each provision of the approved SIP. The CAA and the federally-approved SIP preempt any such state legislation: "although not quite put this way, the SCAQMD argument is that the operation of the CAA has been preempted by state legislation. In the Court's opinion, this puts the matter upside down. *In the event of conflict with CAA, the federal statute prevails*." *Coalition for Clean Air, Inc.,* 1999 WL 33842864 at *5. (Emphasis added); *Sweat,* 200 F.Supp.2d at 1172; *Kentucky Resources Council,* 304 F.Supp.2d at 926-927.

In the case at bar, the Director has admitted that: (1) On December 1, 2006, he ceased

---

[21] Quoting *Ohio Environmental Council v. United States District Court*, 565 F.2d 393, 398 (6th Cir. 1977)

implementing and enforcing BAT against new and modified under ten ton sources of NAAQS pollution. (Answer at ¶¶ 30, 41, 49; Director's Answer to Request for Admission No. 1, attached at Ex. 3 to the Kravitz Affidavit); and (2) the federally-approved Ohio SIP requires the Director to implement and enforce BAT against such sources (Answer at ¶¶ 28, 30; see Exhibit 2 to the Kravitz Affidavit).

Further, the Director admits that the US EPA did not approve a SIP revision before the Director ceased implementing and enforcing BAT against such sources. (Answer at ¶¶ 30, 43, 81, 92). In fact, the Director is yet to submit a properly-supported SIP revision, and U.S. EPA stated that it could not process the proposed SIP revision. (Answer at ¶ 47). In fact, U.S. EPA found that the BAT Exemption is a "relaxation" of what is currently required under the federally-approved Ohio SIP. (U.S. EPA June 5, 2008 Letter, attached at Ex. 3 to the Kravitz Affidavit). Thus, the BAT Exemption for new and modified under ten ton sources of NAAQS pollution is "less stringent" than the Ohio SIP requirement that such sources employ BAT. That is, the Director has implemented BAT requirements (an "emission standard or limitation") that are less stringent than the BAT requirements in effect under the Ohio SIP, in direct violation of 42 U.S.C. § 7416.

Hence, these facts show that there is no genuine issue of material fact that the Director has breached (for over two years) and continues to breach his duty to enforce and implement the federally-approved Ohio SIP, as required by 42 U.S.C. §§ 7410, 7413, 7416,

The Director's un-approvable proposed SIP revision, which the U.S. EPA found to be incomplete and which was submitted over a year late, does not defeat Plaintiffs' entitlement to summary judgment. The late, deficient submittal is a nullity (See 40 C.F.R. § 51.103) and, therefore, could not be processed by U.S. EPA; thus, the CAA and the federally-approved Ohio

SIP require the Director to enforce BAT against new and modified under ten ton sources of NAAQS pollution. Finally, the Ohio General Assembly's passage of an amended statute attempting to do away with a key component of the SIP-required BAT program does not excuse Ohio EPA's violations. The Director's CAA duties and the Ohio SIP preempt state legislation and the implementing regulation. *See e.g., Coalition for Clean Air, Inc.,* 1999 WL 33842864 at *5; *Sweat*, 200 F.Supp.2d at 1172; *Kentucky Resources Council,* 304 F.Supp.2d at 926-927.

Therefore, summary judgment is proper as a matter of law on Count 1 and Plaintiffs are entitled to an order, at very least declaring that: (1) the Director's failure to enforce and implement the Ohio SIP violates the Clean Air Act, 42 U.S.C. § 7410; (2) the Director's failure to enforce and implement the Ohio SIP violates the Clean Air Act, 42 U.S.C. § 7416; (3) the BAT Exemption adopted and promulgated by Ohio EPA on November 20, 2006 and which became effective on December 1, 2006 violates the Ohio SIP and the Clean Air Act; and (4) Declaring that the Ohio General Assembly's August 3, 2006 amendment of Ohio Revised Code Section 3704.03, containing a statutory BAT exemption for new and modified under ten ton sources of NAAQS pollution, is preempted by the Clean Air Act, 42 U.S.C. § 7416 and 42 U.S.C. § 7410, and by the Ohio SIP.

**C. In addition, this Court should enter an order enjoining the Director to implement the BAT program, as required by the Ohio SIP.**

**1. Since the Plaintiffs have established the Director's CAA violations – his illegal failure to enforce and implement the SIP – he should be enjoined from such conduct.**

42 U.S.C. § 7604(a)(3) authorizes the Court to "enforce" an emission standard or limitation through equitable relief, as case law cited above clearly demonstrates. The Sixth Circuit has held that once CAA violations are proven, then the Court is empowered to enjoin such violations without formally "balancing the equities." *U.S. v. City of Painesville*, 644 F.2d

1186, 1193-94 (6th Cir. 1981). That is, the CAA falls into a subsection of injunction jurisprudence where the Court is empowered to determine whether to grant injunctive relief without the formal Federal Civil Rule 65 analysis.

In fact, one district court in the Sixth Circuit has entered injunctive relief without rigidly balancing the Rule 65 factors for a state's proven failure to enforce its SIP. See *Kentucky Resources Council, Inc*., 304 F.Supp.2d at 930-931 (entering injunctive relief without requiring showing on the degree of irreparable harm). Other district courts have considered it an "obligation" to enter injunctive relief without formally balancing the equities where the citizen plaintiff has established a state's violation of the CAA through that state's failure to enforce and implement provisions of its SIP. *Citizens for Pennsylvania's Future*, 2002 WL 31845880 at *12; See also*, Coalition for Clean Air, Inc.,* 1999 WL 33842864 at * 3 ("Once liability is established, the district court is required by the Act to issue an injunction to compel compliance with the SIP…," though the district court may apply equitable consideration in crafting an injunction); See also, *Citizens For a Better Environment v. Deukmejian*, 731 F.Supp. 1448, 1461 (N.D.Cal.1990) (stating that "courts are 'obligated, upon a showing that the state has violated [a plan], to issue appropriate orders for its enforcement.'"), quoting *Friends of the Earth v. Carey,* 535 F.2d 165, 173 (2nd Cir.1976).

Therefore, where, as here, citizen suit plaintiffs seeking law enforcement have proven the Director's violations, this Court may enter an injunction without formally balancing the Rule 65 factors.

**2. Even if the Court were to balance the injunctive relief factors, equity favors the requested injunction.**

Plaintiffs are "standing in the shoes" of the U.S. EPA as citizen suit plaintiffs. They seek to enforce federal law and to better Ohio's and other states' air quality.

Even if the Court were to apply the equitable factors to this citizen suit, Plaintiffs are entitled to permanent injunctive relief. These factors are: (1) whether the law-enforcing plaintiffs have suffered or will suffer irreparable injury; (2) whether remedies at law are adequate to compensate for the injury; (3) the balance of the parties' hardships; and (4) the public interest. *Sierra Club* v. *Franklin County Power*, 546 F.3d 918, 935 (7th Cir. 2008)(applying traditional permanent injunction test in CAA context).

Plaintiffs have demonstrated actual success on the merits by proving that there is no genuine issue of material fact concerning the Director's CAA violations and through showing that Plaintiffs are entitled to judgment as a matter of law.

Additionally, Plaintiffs, as citizen plaintiffs, have suffered and will suffer irreparable injury without the injunctive relief requested in the Plaintiffs' Motion for Partial Summary Judgment. First, as the United States Supreme Court has stated:

> Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent, i.e., irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment.

*Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 545 (1987). Here, the Ohio EPA's failure to require BAT on new and modified under ten ton sources of NAAQS pollution will continue to result in increased emissions of NAAQS pollutants. Sources without BAT emit more pollution than sources with BAT. NAAQS pollutants are regulated because of their potential effects to health and the environment. (See Exhibit 4 to the Kravitz Affidavit). In *Sierra Club v. Franklin County Power*, irreparable harm was shown where the plaintiff demonstrated that greater emissions of pollutants were likely without injunctive relief. *Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d at 936. A showing that increased air emissions were likely to result in absence of an injunction satisfied the irreparable harm standard. *Id*.; See also, *Coalition For Clean Air, Inc.*

18

1999 WL 33842864 at * 3 (Irreparable injury shown by record of nonattainment with NAAQS, illustrating that enforcement of plan requirements was proper). Here, counties in and around metropolitan areas around the state of Ohio are nonattainment for certain NAAQS pollutants. (Answer at ¶ 56).

Further, in the case at bar, there is no adequate remedy at law. An economic award would not compensate the Plaintiffs (who stand in the shoes of the U.S. EPA) or the broader public for the increased risks posed by increased emissions of NAAQS pollution from the Director's failure to implement and enforce the Ohio SIP. Only an injunction requiring the Director to enforce and implement BAT against new and modified under ten ton sources of NAAQS pollution will redress this injury.

Additionally, the balance of harms favors the Plaintiffs. An injunction will protect the public from irreparable injury. The record contains no showing by the Director that enforcement and implementation of BAT would cause the Director hardship. Ohio EPA implemented and enforced BAT against under ten ton sources of NAAQS for decades. In any event, this Court should not consider issues of feasibility and cost when deciding whether to enjoin the Director to enforce the Ohio SIP. *Coalition for Clean Air, Inc.,* 1999 WL 33842864 * 3 (finding that district court "has no jurisdiction to consider issues of feasibility, general practicality, political objections or ***cost factors*** in ordering the implementation of a SIP")(emphasis added); See also, *American Lung Association*, 871 F.2d at 329.

Further, in evaluating whether an injunction would advance the public interest, it is appropriate to analyze whether the injunction will further the goals of the Clean Air Act. *Sierra Club v. Franklin County Power of Illinois, LLC,* 546 at 936 -937. Here, an injunction will further the purpose of "protect[ing] and enhanc[ing] the quality of the Nation's air resources so as

to promote the public health and welfare and the productive capacity of its population." *See* 42 U.S.C. § 7401(b)(1). Therefore, the "public interest" factor weighs in favor of the requested injunction. Accordingly, even if the Court formally balances the equities, an injunction is proper.

### 3. Injunctive Relief Requested.

In light of the Director's calculated breach of the Ohio SIP and the admitted materiality of the BAT program, Plaintiffs respectfully request an order: (1) Requiring the Director to implement and enforce O.A.C. § 3745-31-05 contained in the U.S. EPA approved Ohio SIP (i.e., to enforce BAT requirements against new and modified under ten ton sources of NAAQS pollution); (2) Enjoining the Director from further implementation of the BAT Exemption that contravenes the Ohio SIP; and (3) Awarding such other relief, including interim fees and costs, as may be necessary, just, or appropriate under the circumstances.

### IV. CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that this Court enter summary judgment on Count I of the Complaint and grant the declaratory and injunctive relief and interim fees and costs requested in the Motion.

Respectfully Submitted,


s/ D. David Altman
D. David Altman (0021457)
Brett A. Kravitz (0069101))
Justin D. Newman (0080968)
D. DAVID ALTMAN CO., L.P.A.
15 East 8th Street, Suite 200W
Cincinnati, Ohio 45202
(513) 721-2180
daltman@one.net

*Trial Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I, hereby certify that on March 7, 2009, a copy of the foregoing Plaintiffs' Motion for

Partial Summary Judgment was electronically filed with the Clerk of Court using the CM/ECF

System, which will send notification of such filing to the following:

Nicole Candelora-Norman
Rebecca L. Hussey
Gregg H. Bachmann
Ohio Attorney General's Office
Environmental Enforcement Section
Public Protection Division
30 East Broad St., 25th Floor
Columbus, OH  43215-3400
*Attorney for Defendant*
*Ohio EPA Director*

s/ Justin D. Newman
Attorney for Plaintiffs