IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sierra Club, *et al.*, | : | |
| Plaintiffs | : | Civil Action 2:08-cv-865 |
| v. | : | |
| Christopher Korleski, Director of Ohio EPA, | : | Magistrate Judge Abel |
| Defendant | : | |

**ORDER**

This matter is before the Court on plaintiffs' March 7, 2009 motion for partial summary judgment (doc. 19).

I. **Allegations in the Complaint**

This action is brought under the Federal Clean Air Act, 42 U.S.C. §7401, *et seq.* The complaint makes the following allegations. In November 2006, the Ohio EPA adopted revised Ohio Adm. Code § 3745-31-05, which exempts all sources that produce less than 10 tons per year of any National Ambient Air Quality Standards ("NAAQS") pollutant or pre-cursor from Ohio's State Implementation Plan ("SIP") requirement that all sources of air contaminants employ the best available technology ("BAT") to reduce air emissions. The Ohio EPA began enforcing the new BAT exemption effective December 1, 2006, but failed to submit a SIP revision to U.S. EPA within 60 days after

1

the BAT exemptions adoption. It did not submit revised Ohio Adm. Code § 3745-31-05 to the U.S. EPA for approval until January 18, 2008. In June 2008, U.S. EPA advised Ohio EPA that the January 2008 submission was incomplete and could not be processed. Ohio EPA continues to enforce the BAT exemption.

The complaint pleads the following causes of action: (1) Ohio EPA's adoption and enforcement of Ohio Adm. Code § 3745-31-05, which contains less stringent requirements than Ohio's SIP violates 42 U.S.C. §§ 7410 and 7416; (2) the BAT exemption violates the anti-backsliding provisions of the Clean Air Act, 42 U.S.C. §§ 7410(a) and 7515; (3) Ohio EPA's failure to timely request a modification of its SIP violated the Clean Air Act's notice and opportunity to be heard provisions, 42 U.S.C. § 7410(l), 40 C.F.R. §§ 51.102 and 51.104; and (4) Ohio EPA failed to satisfy the requirement of 40 C.F.R. Part 51, Appendix that it submit "technical support" for modification of its SIP.

## II. Arguments of the Parties

### A. Plaintiffs Sierra Club, Michael Sinclair, Theresa Cole, and Josephine Cole

Plaintiffs seek summary judgment on count 1 of their complaint, which alleges that defendant Christopher Korleski, the Director of the Ohio Environmental Protection Agency, is in violation of his Clean Air Act duty to enforce the best available technology ("BAT") requirements of the federally-approved Ohio State Implementation Plan ("Ohio SIP"). It is undisputed that since December 1, 2006, the Director has failed to

apply BAT to new and modified sources that have the potential to emit less than 10 tons per year of National Ambient Air Quality Standards ("NAAQS") pollution.

Plaintiffs request that the Court enter an order granting summary judgment on count 1 of the complaint and:

1. Declaring that the Director's failure to enforce and implement the Ohio SIP violates the Clean Air Act, 42 U.S.C. § 7410;

2. Declaring that the Director's failure to enforce and implement the Ohio SIP violates the Clean Air Act, 42 U.S.C. § 7416;

3. Declaring that the BAT exemption (i.e., the regulatory exemption from BAT for new and modified under 10 ton sources of NAAQS pollution) adopted and promulgated by Ohio EPA on November 20, 2006 and which became effective on December 1, 2006 violates the Ohio SIP and Clean Air Act;

4. Declaring that the Ohio General Assembly's August 3, 2006 amendment of Ohio Revised Code 3704.03, containing a statutory BAT exemption for new and modified under 10 ton sources of NAAQS pollution, is preempted by the Clean Air Act, U.S.C. § 7416 and 42 U.S.C. § 7410, and by the Ohio SIP;

5. Requiring the Director to implement and enforce O.A.C. § 3745-31-05 contained in the U.S. EPA approved Ohio SIP (i.e., to enforce BAT

> requirements against new and modified under 10 ton sources of NAAQS pollution);
>
> 6. Enjoining the Director from further implementation of the BAT exemption that contravenes the federally-approved Ohio SIP; and,
>
> 7. Awarding such other relief, including interim fees and costs, as may be necessary, just, or appropriate under the circumstances.

The facts proving the Director's failure to enforce Ohio's BAT requirements against new and modified under 10 ton sources of NAAQS pollution and the importance of the BAT program to the federally-approved state plan are not in dispute.

Plaintiffs maintain that once each state's SIP is approved, the Clean Air Act requires that state to enforce and implement each provision of the approved SIP. Under 42 U.S.C. § 7416, states are prohibited from adopting or enforcing any emission standard or limitation that is less stringent than an emission standard or limitation under an approved implementation plan. Each state also has a duty to ensure adequate implementation of its federally-approved SIP and ensure that implementation of the approved plan is not prohibited by state or federal law. 42 U.S.C. § 7410(a)(2)(E). States have a clear duty to enforce the federally-approved SIP. 42 U.S.C. § 7413(a)(2).

Plaintiffs argue that this Court properly found that BAT meets the definition of an emission standard or limitation under the Clean Air Act. Because the Director has admittedly failed to implement the BAT program as required by the SIP, there is no

4

genuine issue of material fact that the Directer is in violation and has violated an emission standard or limitation.

Plaintiffs contend that they are not suing the Director for merely failing to exercise his enforcement discretion. Rather, count 1 concerns the Director's wholesale failure to implement the BAT program for under 10 ton sources as the Ohio SIP requires. Plaintiff argues that there is no genuine dispute that a BAT exemption that ignores under 10 ton sources is less stringent than the federally mandated BAT provision that requires BAT on those sources.

Plaintiffs further argue that the record demonstrates that the individual plaintiffs and the Sierra Club have Article III standing because environmental plaintiffs demonstrate injury in fact with evidence that they use the affected area and are persons for whom the aesthetic and recreational values of the land will be lessened by the challenge activity. Breathing polluted air is sufficient to demonstrate injury in fact. Likely exposure to increased emissions of a criteria pollutant near an individual's workplace has been found to be an injury in fact, and the level of criteria pollutant in the ambient air need not be above the NAAQS.

Plaintiffs maintain that their injuries are fairly traceable to the Director's violations of the Clean Air Act. According to plaintiffs, they only need to demonstrate that defendant's conduct contributes to the threatened harm to satisfy the fairly traceable requirement. Plaintiffs also contend that the redressibility requirement is met

5

because they can show that the requested relief will likely lessen the emissions of NAAQS pollution to which they are exposed.

### B. Defendant Christopher Korleski

Defendant argues that plaintiffs' motion for partial summary judgment should be denied because their complaint fails to state a proper cause of action under 42 U.S.C. § 7604(a). Even if BAT is an emission standard or limitation that Ohio is failing to enforce, the text, legislative history, and enforcement structure of 42 U.S.C. § 7604(a) show that a state's failure to enforce BAT is not the same as violating it. Section 7604(a)(1) allows citizens to sue polluting sources for violating an emission standard or limitation. Section 7604(a)(2) allows citizens to sue the federal government, and not the state government, for its failure to enforce environmental regulations.

Here, plaintiffs have sued under section 7604(a)(1) even though they do not, and cannot, claim that the Director is an emissions source or polluter who has violated the BAT standards by failing to install BAT. Defendants maintain that plaintiffs' suit is premised entirely on the Director's role as a regulator. According to defendant, plaintiffs do not state a cause of action because a governmental agency does not violate a law that it has a duty to enforce, and the U.S. EPA retains the sole authority to ensure that states perform their regulatory duties under the Clean Air Act.

The Director also argues that plaintiff's motion should be denied because they have not established Article III standing to challenge the BAT exemption because they

have not identified any specific air contaminant source exempted from BAT and that they are actually or imminently breathing air from any BAT-exempt source. The diffuse nature of air pollution does not negate the requirement that plaintiffs identify specific sources of the pollution causing them an injury-in-fact.

The Director further argues that plaintiffs' motion should be denied because a material fact exists over whether Ohio's SIP would be less stringent with the revised BAT standard. Stringency is a material fact, and there is much evidence which supports the conclusion that the revised SIP will not be less stringent. According to the Director, BAT would not have a measurable effect on the NAAQS, and when the state develops the SIP for NAAQS attainment, it does not factor into the demonstration whether sources emitting less than 10 tons would install BAT because Ohio EPA bases attainment status in future projections of air quality. Defendant also maintains that BAT is not the only regulation that governs emissions from small sources.

**III.   Discussion**

On May 31, 1972, the Ohio SIP was first approved by the U.S. EPA and incorporated by reference into the Code of Federal Regulations at 40 C.F.R. § 52.1870. The federally approved Ohio SIP includes the requirement that new or modified air contaminant sources employ BAT to reduce air emissions. Under the federally-approved Ohio SIP, BAT is required for new or modified sources that have the potential to emit less than 10 tons per year of NAAQS pollution or precursors to NAAQS pollution. Before a permit to install may be issued under the federally-approved SIP, the

Director must determine that the installation or modification and operation of the air contaminant source will employ BAT.

On August 3, 2006, the Ohio General Assembly passed amended Ohio Revised Code § 3704.03, which exempted new and modified under 10 ton sources of NAAQS pollution from BAT requirements. On November 20, 2006, Ohio EPA promulgated revised Ohio Administrative Code § 3745-31-05(A)(3), which exempted new or modified sources that have the potential to emit less than 10 tons per year of NAAQS pollution or precursors to NAAQS pollution from employing BAT requirements. The BAT exemption became effective December 1, 2006. The Director ceased enforcing and implementing the BAT requirements against new or modified sources that emit less than 10 tons per year without obtaining federal approval.

Ohio did not submit revised Ohio Adm. Code § 3745-31-05 to the U.S. EPA for approval until January 18, 2008. On June 5, 2008, the U.S. EPA concluded that the Director's proposed SIP revision was incomplete, and it could not process the incomplete submittal.

Defendant maintains that plaintiffs' complaint fails to state a proper cause of action under 42 U.S.C. § 7604(a) because a government agency does not violate a law that it has a duty to enforce, citizen suits for regulatory failure are limited to claims against the administrator of the U.S. EPA, and U.S. EPA retains the sole authority to ensure that states perform their regulatory duties under the Clean Air Act.

Section 7604(a) of title 42 of the United States Code states:

8

a) Authority to bring civil action; jurisdiction

Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf--

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator, or

(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

42 U.S.C. § 7604(a).

This Court previously held that BAT requirements are emission standards or limitations under the Act. 42 U.S.C. § 7604(f)(1).[1] Because the U.S. EPA has not yet

---

[1] Under the Clean Air Act, an "emission standard or limitation" is defined as: (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard . . . [or]

(4) any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.

which is in effect under this chapter (including a requirement applicable by reason of section 7418 of this title) or under an applicable implementation plan.

adopted Ohio's SIP revision proposal, the state continues to operate under the existing SIP, and the Director has a duty not to enforce or adopt any emission standard or limitation that is less stringent than an emission standard or limitation under effect under an approved implementation plan. 42 U.S.C. § 7416.

Defendant argues that the language of the statute permits a citizens' suit only against a state agency that "is alleged to have violated . . . an emission standard . . . ." 42 U.S.C. § 7604(a)(1)(A). He interprets this language to permit suit only against the state as a polluter, not as a regulator. Defendant advances three arguments to support this reading.

First, defendant argues that the plain meaning of the statute demonstrates that it does not authorize a citizens' suit against the state as regulator. Defendant maintains that only a polluter *violates* an emission standard, that the state does not *violate* a law by failing to enforce it. Since the statute does not define "violate," defendant looks to the ordinary and natural meaning of the word. *Limited, Inc. v. Comm'r*, 286 F.3d 324, 333 (6th Cir. 2002). The RANDOM HOUSE UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 2001) defines "violation" as "a breach, infringement, or transgression, as of a law, rule, promise, etc." Defendant asserts that a failure to enforce a law is not the same thing as a "breach," "infringement" or "transgression." The Director of Ohio EPA does not "violate" BAT requirements when he fails to enforce

---

42 U.S.C. § 7604(f)(1),(4). BAT requirements fall within the definition of a "a standard of performance. . . which is in effect under an applicable implementation plan."

them against sources producing less than 10 tons per years of NAAQS pollutants or pre-cursors.

Second, defendant argues that its construction of § 7604(a)(1) is buttressed by the express grant of a citizens' action "against the Administrator [of U.S. EPA] where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary . . ." 42 U.S.C. § 7604(a)(2). If § 7604(a)(1) created a cause of action against the United States as a regulator, there would have been no reason to enact § 7604(a)(2). Instead, defendant argues, Congress created two distinct causes of action: citizens' suits against pollution sources, § 7604(a)(1), and citizens' suits against regulators, § 7604(a)(2). Had Congress intended citizens' suits against states as regulators, it would have added them to § 7604(a)(2). Some legislative history supports this position. When the Clean Air Act was enacted in 1970, Senator Edmund Muskie stated that § 7604 of the bill that emerged from conference "authorizes citizen suits against polluters to abate violations of any emission limitation under the Act including State implementation plans and against the Administrator to require him to do any of the functions of this Act assigned to him. Any polluter, including a government agency, is subject to such a suit after 60 days notice from the citizen-plaintiff." 116 Cong. Rec. S. 42, 381 (daily ed. December 18, 1970). Nothing in the legislative history expressly states that the Act creates a cause of action against a state for failure to enforce a provision of the Act.

Third, the Clean Air Act envisions a relationship between federal and state governments described as "cooperative federalism." *Connecticut v. EPA,* 696 F.2d 147, 151 (2d Cir. 1982); *National Parks Conservation Ass'n v. Tennessee Valley Authority*, 480 F.3d 410, 412 (6th Cir. 2007) . "[I]mplementation of the Act involves a complex interplay of state and federal responsibilities . . . ."*Wilder v. Thomas,* 854 F.2d 605, 608 (2d Cir. 1988). The stated purpose was to address air pollution by using "Federal financial assistance and leadership . . . for the development of cooperative Federal, State, regional, and local programs to prevent and control air pollution." 42 U.S.C. § 7401(a)(3), (4).

States are responsible for implementing and maintaining SIPs, 42 U.S.C. § 7407(a), which the EPA approves. The states are required to provide adequate assurances that they will have adequate personnel, funding and authority to enforce the SIPs and other provisions of the Act. 42 U.S.C. § 7410(a)(2)(E). The mechanism adopted to ensure State implementation of the Act is sanctions by the Administrator of U.S. EPA. 42 U.S.C. § 7509(a)(4). These include retention of federal highway funds and the requirement that states offset emissions from certain industrial facilities. 42 U.S.C. § 7509(b). These sanctions are within the sole discretion of the Administrator. 42 U.S.C. § 7509(a). This approach is respectful of federalism.

**Analysis.** Defendant cites no case authority supporting its reading of § 7604(a)(1). Defendant's argument that a governmental agency does not violate an emission standard when it fails to enforce it finds little support in the case law. A

number of cases hold that citizens' suits may be brought against state and local averments for failing to enforce SIPs. *See e.g, American Lung Association of New Jersey v. Kean,* 871 F.2d 319, 324 (6th Cir. 1989) (Federal courts "have jurisdiction under [§ 7604(a)(1)] to adjudicate citizens' suits against the state in its regulatory capacity."); *Kentucky Resources Council, Inc. v. U.S. EPA*, 304 F. Supp. 2d 920, 926 (W.D.Ky. 2004)("Since an EPA-approved SIP is enforceable as federal law, no one denies that, by terminating the VET, the District violated federal law by eliminating the program."); *Communities for a Better Environment v. Cenco Refining Co.,* 180 F.Supp.2d 1062, 1078-79 (C.D. Cal. 2001); *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1171 at n. 12 (D. Ariz. 2001)(citing *Delaware Valley Citizens Council v. Davis*, 932 F.2d 256, 267-68 (3d Cir.1991) for the proposition that 42 U.S.C. § 7604 allowed the district court to consider a citizen suit seeking to "police" a state's compliance with a SIP); *and Citizens for Pennsylvania's Future v. Mallory*, No. CIV.A. 02-798, 2002 WL 31845880 at * 12 (E.D. Pa. Dec. 18, 2002) ("Because Defendants admit that the [state enhanced vehicle and maintenance inspection program] has not been implemented in the Sixteen Counties . . ., the Court finds that Defendants have violated 'emission standards or limitations' under 42 U.S.C. § 7604(f) that are in effect under the Act.").

The single case holding that there is no cause of action under § 7604(a)(1) against a state or local government for failing to enforce provisions of the Clean Air Act is *Citizens Association of Georgetown v. Washington,* 535 F.2d 1318, 1320-22 (D.C. Cir. 1976). That court held:

After reviewing the legislative history of the citizen suit provision, it is our conclusion that an allegation that a government instrumentality has failed to enforce the Clean Air Act does not satisfy the statutory requirement that the government instrumentality be alleged to be in violation of "an emission standard or limitation." Although early versions of the legislation gave the district courts jurisdiction over civil actions "for . . . enforcement, or to require such enforcement," whenever a government instrumentality was alleged to be in violation of "any . . . provision" of the Act, see Senate Committee on Public Works, 91st Cong., 2d Sess. s 304(a)(1) Committee Print No. 1 (1950) (emphasis added), reprinted in Environmental Policy Division of the Congressional Research Service, A Legislative History of the Clean Air Amendments of 1970, at 704 (1974) (hereinafter cited as Legislative History), the enacted version limited federal jurisdiction over suits against a governmental instrumentality to those alleging a violation of an emission standard or limitation, or of an order issued by the Administrator of the EPA or by a State with respect to an emission standard or limitation. And the legislative history surrounding the evolution of those limitations quite clearly indicates that section 304(a)(1) confers federal jurisdiction only over suits against polluters, and, under certain conditions, the Administrator of the EPA.[2]

---

[2] Section 304(a)(2) of the Clean Air Act, which is not at issue in this case, provides federal jurisdiction over suits by citizens against the Administrator of the EPA "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."42 U.S.C. § 1857h-2(a)(2) (1970).

For example, in the course of the floor debate in the House over the version of the Act that emerged from the Conference Committee, Congressman Staggers noted that section 304 of the Act would permit citizen suits "against polluters as well as against the Administrator."116 Cong.Rec. 42520 (1970), reprinted in Legislative History, supra, at 112 (emphasis added). Similarly, Senator Muskie's summary of the key provisions of the Conference version of the Act emphasized that the "conference agreement authorizes citizen suits against polluters to abate violations of any emission limitation under the Act. . . . Any polluter, including a government agency, is subject to suit after sixty days (sic) notice from the citizen plain-

14

> tiff."116 Cong.Rec. 42386 (1970), reprinted in Legislative History, supra, at 136 (emphasis added).

No court has followed *Citizens Association of Georgetown* and several have expressly rejected its reasoning. *E.g., American Lung Association of New Jersey*, 871 F.2d at 324-25 (Acknowledging the legislative history of the 1977 extensive amendments also contained no references to permitting suits by citizens to compel regulation, but finding that the plain language of § 7604(a)(1) permitted such suits.); *Cenco,* 180 F.Supp.2d at 1078-79 an n. 2 (Relying on substantial amendments to §7604 in 1997 and the failure of other courts to follow *Citizens Association of Georgetown* to find a citizens' cause of action for failure to enforce SIPs.*)*

Neither *American Lung* nor *Cenco* contain a convincing analysis of how to read § 7604(a)(1). *American Lung* recognizes that the legislative history supports the construction that § 7604(a)(1) permits suit only against the state as a polluter, but asserts the commonplace that legislative history cannot override the plain meaning of a statute. Then without further analysis, the court holds that "the explicit language of the Clean Air Act permits this suit." 871 F.2d at 325.

*Cenco* placed reliance on the 1977 amendments to the Act, which added § 7604(f)(4) that defined the term "emission standard or limitation. But the *Cenco* court does not explain why adding a definition of emission standard changed how § 7604(a)(1) should be read. As *American Lung* recognized, the amendment merely added a definition of emission standard. It did not change § 7604(a)(1). 871 F.2d at 324.

Neither *American Lung* nor *Cenco* discuss the language of § 7604(a)(1), the overall structure of the Act, or the difficulty of giving content to both § 7604(a)(1) and § 7604(a)(2). Any construction of § 7604(a)(1) must start with the language of the statute.

The Court is required to give the words in a statute their ordinary and natural meaning. *Limited, Inc.*, 286 F.3d at 333. Section 7604(a)(1) authorizes citizens' suits "against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency . . . who is alleged to have violated . . . an emission standard . . . ." The category of persons who can be sued under the subsection are *anyone who violated an emission standard.* As plaintiffs argue, a state violates federal law when it fails to enforce a SIP. But does it "violate" an emission standard? As far as a state or local governmental entity is concerned, is there a difference in the language of § 7604(a)(1) between violating federal law by failing to enforce an emission standard and violating an emission standard? My reading of the legislative history, § 7604(a)(2), and the structure of the Act suggests that there is.

To my ear, saying that a governmental agency "violates" an emission standard when it fails to enforce it is awkward. It is more natural to say that the agency violated its duty to enforce the law (perform its regulatory function), than that it violated the provision it failed to enforce. So while there is a "breach" of the law, it is not a breach of the emission standard but the duty under 42 U.S.C. §§ 7407(a) and 7410(a)(2)(E) to enforce the Clean Air Act. The legislative history supports that reading of § 7604(a)(1),

since Senator Muskie and Congressman Staggers both asserted that the subsection permitted suits against polluters.

Next, the structure of the Act supports limiting § 7604(a)(1) citizen suits to actions against polluters. As defendant argues, the Act encourages the "development of cooperative Federal, State, regional, and local programs to prevent and control air pollution." 42 U.S.C. § 7401(a)(3), (4). States are responsible for implementing and maintaining SIPs, 42 U.S.C. § 7407(a). The Act ensures that states meet their obligation to enforce the SIPs and other provisions of the Act, 42 U.S.C. § 7410(a)(2)(E), by giving the U.S. EPA Administrator the power to sanction a State for noncompliance. 42 U.S.C. § 7509(a)(4).

Finally, § 7604(a)(2) authorizes citizen suits against the U.S. EPA Administrator for "failure . . . to perform any act or duty under this chapter which is not discretionary with the Administrator . . . ." Thus, suits against the Administrator as regulator are authorized by this subsection, which would not be necessary if suits against the Administrator for failure to enforce the Act or regulations implementing it was authorized by § 7604(a)(1).

In reaching the conclusion that § 7604(a)(a) authorizes citizen suits against a state or local government only as polluters, I recognize that all the courts that have considered the question, other than *Citizens Association of Georgetown*, have held that the subsection authorizes suits against state and local governments for failure to enforce a SIP and that many commentators believe that "[c]itizen suits are at the heart of the field

17

of environmental law . . . ."[2] James R. May, "Now More Than Ever: Trends in Environmental Citizen Suits at 30," 2003 Widener L. Rev. 1, 4 (2003). Nonetheless, a court must enforce the law as enacted by Congress; and § 7604(a)(1) permits citizen suits against a state that is alleged to have "violated" an emission standard. And the ordinary and natural meaning of "violated" in that context is to have breached an emission standard. That is, the subsection authorizes a citizen suit against the state as a polluter. It does not authorize suit against the state as a regulator who failed to enforce the Act.

IV. **Conclusion**

For the reasons stated above, Plaintiffs' March 7, 2009 motion for partial summary judgment (doc. 19) is DENIED.

                                            s/ Mark R. Abel
                                            United States Magistrate Judge

---

[2] May reports that three of four judicial opinions in environmental cases involve a citizen suit. *Id.*