# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| **SIERRA CLUB,** *et al.*, | : | |
|  | : | **Case No. 2:08-cv-865** |
| Plaintiffs | : | |
|  | : | |
| -vs- | : | **Magistrate Judge Mark R. Abel** |
|  | : | |
| **CHRISTOPHER KORLESKI** Director, Ohio Environmental Protection Agency | : | |
|  | : | |
| Defendant. | : | |

## PLAINTIFFS' MOTION FOR AN INTERIM AWARD OF ATTORNEYS' FEES AND LITIGATION COSTS

Plaintiffs Sierra Club, Michael Sinclair, Theresa Cole, and Josephine Cole (collectively "Sierra Club") move this Court for an award of attorneys' fees and litigation costs. Sierra Club requests fees and expenses incurred through March 18, 2010.[1] Such fees are appropriate under the Clean Air Act ("CAA")[2] citizen suit provision because Sierra Club has obtained a

---

[1] The Sierra Club will supplement this fee application, after the appeal to the Sixth Circuit is resolved, with a request for fees/costs relating to the Director's appeal of the February 2, 2010 injunction and with additional fees/costs related to Sierra Club's second count.

[2] 42 U.S.C. § 7401-7671q

- 1 -

substantial benefit[3] it sought in bringing this action – an injunction requiring the Director[4] to follow his Ohio SIP commitment to implement the Best Available Technology ("BAT") program for under 10 ton NAAQS sources[5]. (See Feb. 2, 2010 Order, Doc. 75).

For the reasons stated in the attached memorandum and exhibits[6], Sierra Club requests that this Court award $445,003.93[7] in attorneys' fees and $6,081.53 in costs/expenses[8] and requests that the Court consider this Motion before the Director's appeal to the Sixth Circuit is resolved.

Respectfully submitted,

s/ D. David Altman
D. David Altman (0021457), *Trial Attorney*
Brett A. Kravitz (0069101))
Justin D. Newman (0080968)
D. DAVID ALTMAN CO., L.P.A.
15 East 8th Street, Suite 200W
Cincinnati, Ohio 45202
(513) 721-2180
daltman@one.net

---

[3] This is not to minimize the importance of the anti-backsliding allegations in Count 2, still before this Court. Count 2 issues complement the injunction granted under Count 1. To the extent that the injunction is not being fully complied with – as appears to be the case – the "backsliding" under the CAA is continuing.

[4] "Director" refers to the named Defendant in this action.

[5] Under 10 ton NAAQS sources, for purposes of this filing, refers to air contaminant sources that have the potential to emit, taking into account emissions controls, less than ten tons per year of any pollutant or precursor to a pollutant for which a National Ambient Air Quality Standard (NAAQS) has been set.

[6] This Motion incorporates the attached memorandum by reference.

[7] Sierra Club has taken a discretionary 7% reduction in attorneys' fees to account for any arguably duplicative or unnecessary time. The fee total through March 18, 2010, as billed, is $478,498.86.

[8] The Sierra Club is deferring its request for reasonable costs associated with technical consultants.

**MEMORANDUM IN SUPPORT**

**I.     THE BASIS FOR THE AWARD**

Whatever issue the Director actually seeks to have reviewed by the Sixth Circuit, the Sierra Club has established – and this Court has found – that the Director is violating the CAA and the Director has been ordered to stop the CAA violations.

Through this 42 U.S.C §7604(a)(1)[9] lawsuit, the Sierra Club sought an injunction requiring the Director to stop violating an emission standard or limitation – his federally-approved Ohio SIP commitment to make the BAT determination for under ten ton NAAQS sources. (Doc. 2 p. 18). The Sierra Club also sought a finding that the Director was violating federal law through failing to make the BAT determination for under ten ton NAAQS sources and that the illegal state BAT exemption was preempted by the federally-approved Ohio SIP and the CAA. (Doc. 2 p. 17-18). In short, the Sierra Club sought an order requiring the Director to fully implement a program that he had implemented for approximately 30 years, and in the process, to secure cleaner air for the Sierra Club's members and the broader public. Indeed, even the Ohio EPA has described the BAT program as an integral component of the federally-approved Ohio SIP.

> This Court's Feb. 2, 2010 Order states, in relevant part:
>
> ***….Plaintiffs' motion for partial summary judgment on count 1 of the complaint is GRANTED.***
>
> ***The Court HOLDS that the Director's failure to enforce and implement the Ohio SIP violates the Clean Air Act…***
>
> ***…the BAT exemption (i.e., the regulatory exemption from BAT for new and modified under 10 ton sources of NAAQS pollution) adopted and promulgated by Ohio EPA on***

---

[9] This is a subparagraph of the CAA citizen suit provision, which in part authorizes citizens to bring suit against any person that has repeatedly violated and/or is in violation of an emission standard or limitation. See 42 U.S.C. § 7604(a).

> *November 20, 2006 and which became effective on December 1, 2006 violates the Ohio SIP…*
>
> *…and the Ohio General Assembly's August 3, 2006 amendment of Ohio Revised Code 3704.03, containing a statutory BAT exemption for new and modified under 10 ton sources of NAAQS pollution, is preempted by the Clean Air Act…*
>
> *…The Director is ORDERED to implement and enforce O.A.C. § 3745-31-05 contained in the U.S. EPA approved Ohio SIP (i.e., to enforce BAT requirements against new and modified under 10 ton sources of NAAQS pollution), and the Director is ENJOINED from further implementation of the BAT exemption that contravenes the federally-approved Ohio SIP.*

(Doc. 75 pp. 16-17)(emphasis added).

In brief, the Sierra Club obtained the injunctive relief and the CAA violation findings that it sought in its Complaint. According to the Director, he immediately began making BAT determinations for under 10 ton NAAQS sources (in response to the injunction) and will continue to do so throughout the appeal. In light of these excellent and immediate results and the lengthy duration of an appeal to the Sixth Circuit, an interim, fully-compensatory award of fees and costs is necessary and appropriate.

The necessity of the award – and the need to have it ordered now – lies with the small size of the Plaintiffs' lawyers' office, the corresponding small inventory of time, and the substantial time required, especially in key months. For example, Sierra Club's lawyers devoted over 120 hours to this matter in October 2009 (when numerous briefs were due) and well over 100 hours in January 2009.

## II.     LAW AND ARGUMENT

As set forth below, this Court should award Sierra Club fees and costs (A) because the Sierra Club has achieved "success" through the Feb. 2, 2010 Order  – requiring the Director to

fulfill his Ohio SIP commitment and finding that the Director violated federal law – the CAA (Doc. 75); and (B) because the fees and costs requested are reasonable.

Further, this Court should consider this Motion now and not wait for resolution of the Sixth Circuit appeal. Such "interim" consideration is proper because the Sierra Club has prevailed on a central issue in this litigation, this case will likely be of long duration because of the Sixth Circuit appeal, and waiting until the resolution of the appeal for a fee award would severely prejudice the Sierra Club.

**A. The Sierra Club has met and surpassed the whenever appropriate fee threshold.**

Through achievement of this Court's Feb. 2, 2010 Order, which grants a permanent injunction requiring the Director to implement BAT for under 10 ton sources, the Sierra Club has met and exceeded the "whenever appropriate" standard of the CAA citizen suit provision.

In relevant part, the CAA citizen suit provision provides that a "…court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, ***whenever the court determines such award is appropriate***." 42 U.S.C. § 7604(d)(emphasis added).[10] Congress enacted this provision to "afford…citizens…very broad opportunities to participate in the effort to prevent and abate air pollution" and urged the courts "to recognize that in bringing legitimate actions under this section citizens would be performing a public service and in such instances the court should award costs of litigation to such party." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986), *internal citations omitted*.

---

[10] This case is clearly an action brought pursuant to 42 U.S.C. § 7604(a). Therefore, the fee-shifting provision of the CAA is applicable to the case at bar. Because the Feb. 2, 2010 order grants injunctive relief, it is a "judgment." Fed. R. Civ. P. 54(a). A motion for attorney's fees must be filed 45 days after a judgment. See S.D. Ohio Civ. R. 54.2.

A fees and costs award is "appropriate" if the fee applicant obtained "some degree of success on the merits." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983). The party seeking fees "…does not have to succeed completely on a claim to achieve 'some success' which would, in turn, merit the award of fees and costs." *Pound v. Airosol Company, Inc.*, 498 F.3d 1089, 1101 (10th Cir. 2007). For example, a summary judgment order finding a CAA violation, ***even without granting injunctive relief or civil penalties***, is "some degree of success on the merits" that makes one eligible for fees/costs under § 7604(d). *Id*. at 1101-1102.

Indeed, the breadth of the "some success" requirement is made clear in United States Supreme Court precedent. In *Delaware Valley Citizens' Council for Clean Air*, an award of attorneys' fees and costs was appropriate for a party's enforcement of a consent order that it obtained in a prior case. 478 U.S. at 559-561. In *Ruckelshaus*[11], the United States Supreme Court recognized that Congress intended the whenever appropriate standard to extend to CAA citizen suits that caused the defendant's abatement of a violation, absent any court order.[12] *Ruckelshaus*, 463 U.S. at 686, n. 8.

This broad construction effectuates Congressional intent: (1) to expand the class of parties eligible for fee awards from prevailing parties to those who "achieve some success, even if not major success;" and (2) to eliminate the restrictive readings of prevailing party statutes

---

[11] Though the Court in *Ruckelshaus* was discussing 42 U.S.C. § 7607, the Court stated that "…awards of attorney's fees under [42 U.S.C § 7604(d)] will be 'appropriate' in circumstances similar to those that are 'appropriate] under [42 U.S.C. 7607]." 463 U.S. at 692. Indeed, the Court analyzed the legislative history of § 7604 in *Ruckelshaus*.

[12] Thus, even "catalysts" who achieve a result that they sought to achieve without any court order (without a consent decree or other court order) are eligible for fees under the "whenever appropriate" standard of the CAA. *See*, *e.g*., *Sierra Club v. Environmental Protection Agency*, 322 F.3d 718, 725-726 (D.C. Cir. 2003)("…the Clean Air Act, unlike statutes that authorize fee awards only to 'prevailing part[ies]' permits awards to so-called catalyst-parties who obtain, through settlement or otherwise, substantial relief prior to adjudication on the merits."). ***Due to the Sierra Club's obtaining the Feb. 2, 2010 Order, the catalyst theory is not implicated in this fee application.***

and the necessity for case-by-case scrutiny about whether a party prevailed on central issues in the case. *Ruckelshaus*, 463 U.S. at 688.

Finally, the CAA legislative history demonstrates that "…plaintiffs who serve the public interest by assisting in the proper implementation of the [CAA]…" should recover fees and costs under Section 7604(d). *Pound*, 498 F.3d at 1102-1103 ("Thus, because [the plaintiff] assisted in the implementation of the [CAA] by proving to the satisfaction of the district court that [the defendant] had violated the CAA, the public interest has clearly been served by the citizen suit.").

In the case at bar, Sierra Club has surpassed the minimum requirements of the CAA's "whenever appropriate" standard. The Court's February 2, 2010 Order granted Plaintiffs' summary judgment on Count 1 and held that: (1) the Director's failure to enforce and implement the Ohio SIP violates the CAA; (2) the illegal BAT regulatory exemption for under 10 ton sources and the BAT exemption in R.C. § 3704.03 was preempted by the federal Clean Air Act and the federally-approved Ohio SIP; and (3) the illegal BAT regulatory exemption violates the Ohio SIP and the CAA. (Doc. 75 pp. 16-17). These findings, alone, make a fee award "appropriate." *Pound*, 498 F.3d at 1101-1102 (a summary judgment order finding a CAA violation, ***even without granting injunctive relief or civil penalties***, is "some degree of success on the merits" that makes one eligible for fees/costs under §7604(d)). Indeed, the Sierra Club has secured two orders finding that the Director is in violation of the CAA. (See Doc. 55 and Doc. 75).

In addition, the February 2, 2010 Order provides that:

The Director is ORDERED to implement and enforce O.A.C. § 3745-31-05 contained in the US EPA approved Ohio SIP (i.e., to enforce BAT requirements against new and modified under 10 ton sources of NAAQS pollution), and the Director is ENJOINED

>from further implementation of the BAT exemption that contravenes the federally-approved Ohio SIP.

(Doc. 75 p. 17). This relief on the merits entitles the Sierra Club to a fee award under any statutory fee-shifting framework, including the broad CAA standard. See *Sierra Club v. Franklin County Power of Illinois*, *LLC*, 670 F.Supp.2d 825, 832-834 (S.D. Ill. 2009)(finding fee award appropriate where Sierra Club obtained CAA injunction requiring construction of an air source to cease until the proper permit was obtained).

Finally, an award is proper because the Sierra Club has furthered the public interest through enforcement of the CAA. See *Pound*, 498 F.3d at 1102-1103. ("Thus, because [the plaintiff] assisted in the implementation of the [CAA] by proving to the satisfaction of the district court that Airosol had violated the CAA, the public interest has clearly been served by the citizen suit.").

Therefore, a fee award is appropriate in the case at bar.

**B. Sierra Club's request for fees and costs is reasonable.**

The Sierra Club's request for $445,003.93[13] in fees and $6,081.53 in litigation costs/expenses is also reasonable. The familiar method for calculating a "reasonable fee" is the lodestar method. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hour rate." *Id.* at 433. When the fee applicant shows that the claimed rate and hours are reasonable, the "resulting product" from the lodestar method is presumed to be the reasonable fee. *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 564. Further, when an excellent result is

---

[13] Sierra Club has reduced its request by 7% to account for any arguable duplication. The fee total through March 18, 2010, as billed, is $478,498.86.

achieved in the litigation, the Court should award a fully compensatory fee. *Hensley*, 461 U.S. at 435.

As set forth below, the hours expended by Sierra Club's lawyers are reasonable. Additionally, the hourly rates for Sierra Club's lawyers are reasonable both nationally and in the context of the Cincinnati/Columbus legal service market. Further, given the excellent result achieved, this Court should award a fully compensatory fee. Finally, Sierra Club's litigation expenses are reasonable.

1. *The hours of Sierra Club's lawyers are reasonable.*

In the case at bar, the Sierra Club seeks fees related to the achievement of a state-wide permanent injunction requiring the Director to make the BAT determination for under 10 ton NAAQS sources. In order to achieve the central benefit that Sierra Club sought in bringing suit, the Sierra Club's counsel has:

- Prepared and served a detailed May 16, 2008 citizen suit notice letter to attempt to resolve the Director's failure to implement the BAT program as required by the Ohio SIP;

- Prepared and filed a citizen suit complaint (2:08-CV-00865, Doc. 2);

- Prepared and reviewed initial disclosures;

- Prepared and filed two successful oppositions to the Director's two motions to dismiss the entire action (Docs. 8, 17, 66, and 75);

- Prepared discovery requests that led to discovery answers from the Director central to securing the Order requiring the Director to implement BAT (Doc. 75);

- Responded to discovery requests from the Director;

- Prepared a motion for summary judgment that led to a finding that the Director has been and continues to be in violation of the CAA; (See Docs. 19, 34, and 55);

- Engaged in extrajudicial attempts to resolve the Director's deficient discovery responses;

- Prepared and filed briefs in response to filings by the Amici Curiae (The Ohio Chamber of Commerce, Ohio Chemistry Technology Council, and Ohio Manufacturers' Association) (Docs. 47 and 71);

- Secured and filed standing declarations (Docs. 22 and 34);

- Prepared an exhibit displaying exemplar illegally-exempted sources, which required dozens of hours of investigative work; (Doc. 34);

- Reviewed thousands of documents relating to the Director's failure to implement the BAT program for under ten ton NAAQS sources;

- Prepared and filed a successful motion for reconsideration and replies in support of that motion (Doc. 64, 71, and 72), which led to the Order enjoining the Director to carry out his Ohio SIP commitment to implement BAT for under ten ton sources.

(See Altman Decl., Ex. 1).

Yet, even before the notice letter was prepared, the Sierra Club's counsel investigated the factual and legal basis of the Director's violations of an emission standard or limitation – here his commitment in the Ohio SIP to make the BAT determination for under 10 ton sources. That work was instrumental to the drafting of the federal notice letter and the citizen suit complaint.[14]

---

[14] The Sierra Club has not sought fees for all compensable work, including time spent drafting discovery in a related state administrative matter. Such time is compensable because that discovery was useful to the federal case. *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 559-561.

In sum, these efforts required a small law office to dedicate over 1800 professional hours over a two-year period (preparation of notice letter to present) to prosecute this case; these efforts are reflected in over 75 docket entries, many of which involve complicated briefing. (See Ex. 1).

Given the complexity of this CAA litigation, the high level of activity during the pendency of and prior to this litigation, the number of hours dedicated to this matter by Sierra Club's counsel is reasonable. The reasonableness of the hours expended is underscored by the result achieved: a state-wide injunction requiring the Director to implement BAT for under 10 ton sources, which will likely better air quality for Ohio residents.

   *2. The hourly rates are reasonable.*

To arrive a reasonably hour rate, courts use the prevailing market rate as a guideline. In determining the prevailing market rate, this Court should evaluate the rate that lawyers of comparable skill and experience can reasonably expect to command within the legal service area. *Northeast Ohio Coal. for the Homeless v. Brunner*, 652 F.Supp.2d 871, 885 (S.D. Ohio 2009). Additionally, courts will look to hourly rates from similar fee cases as a benchmark. *Id*. at 885. Further, the rate that a lawyer actually gets paid for similar services is evidence of his/her prevailing market rate. *See, e.g., Sierra Club,* 620 F.Supp.2d at 834-835.

Given the level of experience and concentration of Mr. Altman, lead counsel for the Sierra Club, the rates charged by Mr. Altman are reasonable both nationally and in the context of the Columbus/Cincinnati service market. Mr. Altman has practiced law for over 35 years, and for the past twenty-five years, has devoted his practice to environmental law. Mr. Altman has published in the area of environmental law and has taught environmental law courses.

Additionally, Mr. Altman has served as lead counsel in numerous CAA cases over the past twenty-five years. Additional detail regarding Mr. Altman's qualifications is found in his declaration. (See Ex. 1).

Highly-experienced associate attorneys employed by Mr. Altman's law office have also worked on this case. These associates have particular experience in state and federal air litigation. (See Ex. 1). The hourly rates of Mr. Altman, his associates, his paralegals, and law clerks are locally and nationally reasonable.[15] (Declaration of James B. Helmer, Esq., Ex. 2); (Declaration of D. David Altman, Esq., Ex. 1); *Sierra Club,* 620 F.Supp.2d at 834-835 (awarding lead attorney $425 per hour in a CAA citizen suit)[16]. A detailed summary of time and billing information for each attorney and a summary of litigation costs are attached to the Altman Declaration. Fully-detailed time records, which contain work-product and privileged information, are available to the Court for in camera review.

3. *A fully compensatory fee is proper.*

United States Supreme Court fee jurisprudence teaches that "where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). *Hensley* also teaches that:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the

---

[15] The Sierra Club is not presently seeking current market rates for its lawyers, even though it is likely entitled to such rates.

[16] An additional declaration from Daniel N. Abraham, Esq. will be filed on Monday, March 22, 2010.

>significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* Indeed, the Sixth Circuit, under *Hensley*, has rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed. *See, e.g.*, *DiLaura v. Township of Ann Arbor*, 471 F.3d 666, 672-673 (6th Cir. 2006). Here, even the Director has stated that "…Plaintiffs' claims all share the same factual basis." (Doc. 65 p. 8).

In the case at bar, the Sierra Club has achieved "excellent results" through securing a substantial benefit that it sought in this litigation: an order requiring the Director to fulfill his Ohio SIP commitment to require BAT on under 10 ton NAAQS sources. This permanent injunction secures a public benefit for Ohio in the form of reduced NAAQS emissions and a direct benefit to members of the Sierra Club.

Further, the February 2, 2010 Order provided the Sierra Club the injunctive relief that it sought for Count 1 and for Counts 3 and 4. Count 3 and Count 4 essentially sought to have the Director follow the federally-approved Ohio SIP until he complied with proper SIP revision procedures. By requiring the Director to adhere to the BAT requirement as it exists in the federally-approved Ohio SIP, the Court has ensured that the Director will have to go through proper SIP revision procedures in order to remove the BAT commitment from the federally-approved Ohio SIP. Therefore, the Sierra Club has obtained the central benefit it sought for Counts 1, 3, and 4.

Under *Hensley*, a fully compensatory fee – for hours spent in the litigation to date – is proper because of the interrelated nature of the claims, the excellent results obtained by the Sierra Club, and because the Sierra Club has reviewed and reduced its request to account for any arguable duplication or excessive time. See *Hensley*, 461 U.S. at 434; See Ex. 1.

*4. The costs and expenses are reasonable.*

The Sierra Club also incurred litigation costs and expenses in the amount of $6,081.53 associated with prosecuting this action, including copying charges, filing fees, and Westlaw research. The litigation costs are summarized in Attachment B to the Altman Declaration. The litigation costs and expenses are reasonable because they were incurred in furtherance of the litigation and are consistent with the rates that Mr. Altman's office charges his clients. *Grimm v. Lane,* 895 F.Supp. 907, 917 (S.D. Ohio 1995)(costs and fees incurred to provide effective and competent representation are recoverable under a fee-shifting statute). Accordingly, the Court should also award Sierra Club the reasonable litigation costs and expenses incurred.

**C. This Court should grant the requested award before the Sixth Circuit appeal is resolved.**

An interim award of fees/costs is proper under the Sixth Circuit's interim award test. First, interim fees are appropriate where a concrete order has been entered that determines substantial rights of the parties, i.e., when a party has prevailed on the merits of at least some of his claims. *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988). Interim fees are especially appropriate where a party has prevailed on an important matter. Further, such an award is appropriate where due to the complex nature of the case, delaying a fee award until the conclusion of the case would work a substantial hardship on plaintiffs and their counsel and "discourage the institution of actions that Congress intended to encourage by passage of attorney fee statutes." *Id.* at 1036.

The Sierra Club has, as set forth above, prevailed on the merits of Count 1, which is a central issue in this litigation. Further, the Sierra Club has obtained a summary judgment finding that the Director is violating federal law – the CAA. The February 2, 2010 Order determines substantial rights of the parties, in that the Director is enjoined to implement the

BAT program for under 10 ton NAAQS sources. Additionally, because of the Director's appeal to the Sixth Circuit, this case is likely to be of long duration. Delaying a fee award will work substantial hardship on Sierra Club and its counsel, who despite securing a substantial injunction and benefit to the Sierra Club and broader public, will have to wait many months for an award. As a result of the injunction, the Director claims to now be requiring BAT on all under ten ton NAAQS sources. This will continue through the appeal.

Accordingly, this Court should grant the requested award before resolution of the appeal to the Sixth Circuit.

### III. CONCLUSION

For the reasons set forth above, Sierra Club respectfully requests that this Court award the reasonable fees and costs sought in this Motion.

Respectfully submitted,

 s/ D. David Altman
D. David Altman (0021457), *Trial Attorney*
Brett A. Kravitz (0069101))
Justin D. Newman (0080968)
D. DAVID ALTMAN CO., L.P.A.
15 East 8th Street, Suite 200W
Cincinnati, Ohio 45202
(513) 721-2180
daltman@one.net

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2010, the foregoing Plaintiffs' Motion for an Interim Award of Attorneys' Fees and Litigation Costs was electronically filed with the Clerk of Court using the CM/ECF System. The electronic system will send notification of such filing to the counsel of record in this case. The parties may access this filing through that system.


s/ Justin D. Newman