# Exhibit 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| **SIERRA CLUB, et al.** | : |
|  | : |
|  | :   **Case No. 2:08-cv-865** |
| **Plaintiffs,** | : |
|  | : |
| **-vs-** | :   **Magistrate Judge Mark R. Abel** |
|  | : |
| **CHRISTOPHER KORLESKI** | : |
| **Director, Ohio Environmental** | : |
| **Protection Agency** | : |
|  | : |
| **Defendant.** | : |
|  | : |

## DECLARATION OF D. DAVID ALTMAN
## IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES

I, D. David Altman, pursuant to 42 U.S.C. § 7604(d), make this declaration in support of a determination of the attorneys' fees requested in Plaintiffs' Application for Attorneys' Fees and Litigation Expenses:

1.  I am an attorney licensed to practice law before the Supreme Court of Ohio, the United States District Court for the Southern District of Ohio, the United States District Court for the Northern District of Ohio, and the United States Court of Appeals for the Sixth Circuit.

2.  I have been in private practice at my own firm since graduating from the University of Cincinnati, College of Law in 1974.  Since the mid-1980s, my practice has focused primarily on representing neighborhoods, citizens, regional and national

1

environmental groups and local units of government seeking to enforce federal environmental laws.

3. In 2008, my office agreed to represent the Sierra Club, Michael Sinclair, Theresa Cole, and Josephine Cole to review the viability of a citizen suit action to try to stop the Ohio EPA's violations of the Clean Air Act. In light of that review, I determined that the Director of Ohio EPA was clearly in violation of the CAA.

*FOUNDATION FOR THE REQUESTED FEES*

4. Since the initial investigative stages in 2008, which led to the notice letter, over 75 docket entries and over 1800 attorney, paralegal, and law clerk hours have been logged in this case.

5. During the course of the litigation, my firm has:

- Prepared and served a detailed May 16, 2008 citizen suit notice letter to attempt to resolve the Director's failure to implement the BAT program as required by the Ohio SIP;

- Prepared and filed a citizen suit Complaint (2:08-CV-00865, Doc. 2);

- Prepared and reviewed initial disclosures;

- Prepared and filed two successful oppositions to the Director's two motions to dismiss the entire action (Docs. 8, 17, 66, and 75);

- Prepared discovery requests that led to discovery answers from the Director central to securing the Order requiring the Director to implement BAT (Doc. 75);

- Responded to discovery requests from the Director;

- Prepared a motion for summary judgment that led to a finding that the Director has been and continues to be in violation of the Clean Air Act; (See Docs. 19, 34, and 55);

- Engaged in extrajudicial attempts to resolve the Director's deficient discovery responses;

- Prepared and filed briefs in response to filings by the Amici Curiae (The Ohio Chamber of Commerce, Ohio Chemistry Technology Council, and Ohio Manufacturers' Association) (Docs. 47 and 71);

- Secured and filed standing declarations (Docs. 22 and 34);

- Prepared an exhibit displaying exemplar illegally-exempted sources, which required dozens of hours of investigative work; (Doc. 34);

- Reviewed thousands of documents relating to the Director's failure to implement the BAT program for under ten ton NAAQS sources;

- Prepared and filed a successful motion for reconsideration and replies in support of that motion (Doc. 64, 71, and 72), which led to the Feb. 2, 2010 Order enjoining the Director to carry out his Ohio SIP commitment to implement BAT for under ten ton sources.

6. Prior to filing the notice letter, my firm investigated the CAA violations of the Director, beginning in January 2008. All of this pre-suit time was instrumental to the notice letter, the federal complaint, and to the success on the merits achieved in this litigation.

7. I am familiar with the hourly rates charged by environmental attorneys in the Cincinnati and Columbus markets and elsewhere in the country in complex and

3

environmental litigation matters. The rates charged by our firm are lower than, but consistent with, the rates of other practitioners in our field.

8. My firm maintains detailed time records for all of our professional services. My hourly billing rate in complex litigation of this type is currently $445 per hour. However, my hourly rate for this case is $420 per hour. Hourly rates for the associates involved in this case are currently $350 for Amy J. Leonard; $300 for Brett Kravitz; $275 for Amy M. Hartford; $210 for Justin D. Newman, and $125 for Elaine K. Lutz. Background information for each of the attorneys with my firm is provided in ¶¶ 29-33, below.

9. Paralegal services provided by our firm are currently billed at $110 per hour.

10. Law clerk services provided by our firm are currently billed at $90 per hour.

11. Attachment A provides a detailed summary of the time spent on this case. Work product and attorney-client privileged information has been excluded. Complete time records can be made available to the Court for an in-camera review. The total legal fees sought in this petition are $445,003.93.

12. All of Plaintiffs' claims in this case and the work performed by Plaintiffs' counsel are factually intertwined. However, attorneys in my office have reviewed each time entry recorded in this case from January 2008 through March 18, 2010 in order to identify any arguably duplicative or excessive time. Based on this review, the fees sought have been reduced by 7% to account for any such duplication. In fact, our total fees billed in this case through March 18, 2010 are $478,498.86.

13. Attachment B provides a breakdown of the litigation costs and expenses that are the subject of this application. These costs were incidental to and necessary to provide

4

effective and competent representation in this matter. The total costs sought in the Motion are $6,081.53. Sierra Club is deferring its request for reasonable costs associated with technical consultants.

14. Because of the nature of this case, it has represented a great deal of risk for my small firm. If not for the prospect of receiving an adequate attorneys' fee in this case, I would not have been able to accept responsibility as counsel in this case and could not have committed the amount of time expended by my firm on the matter. My office had to forego fees in hourly cases at equal or higher rates to represent Plaintiffs in this mater.

15. I am familiar with guiding principles under citizen suit attorney fee statutes, which provide: (a) it is appropriate to award fees where a plaintiff has some success on a claim in the case; and, (b) counsel should recover a fully compensatory fee when the claims are factually intertwined and excellent results have been obtained.

16. Taking the above considerations into account and, given the nature of the case, I represent to this Court that the net time spent was adequate, reasonable, and more than commensurate with the results achieved in the litigation.

## *QUALIFICATIONS OF D. DAVID ALTMAN*

17. While I was at the University of Cincinnati, College of Law, I served as one of the subcommittee chairs of the Ohio Governor's environmental task force that oversaw the beginning operations of the then newly-formed Ohio Environmental Protection Agency. I also served as a committee chair on the 1972 City of Cincinnati Mayor's Task Force on the Environment. The Mayor's Task Force drafted a comprehensive report on environmental issues facing the City of Cincinnati.

18. I have also served on many committees and boards promoting community and civic interests, including: Member of the City of Cincinnati's Environmental Advisory Council (EAC) from 1975 to 1987; Chairman of the EAC from 1977 to 1978 and from 1982 to 1985; Chair, Environmental Section of the Ohio Academy of Trial Lawyers (now the Ohio Association for Justice) from 1989 to 1995 and from 2006 to 2008; and, Chairman of the City of Cincinnati Environmental Justice Working Group from 2006 to 2009.

19. Since 1984, my practice has been primarily devoted to complex environmental litigation. Many of these federal enforcement cases involved representation of neighborhood and community groups and have had a lasting impact on the field of environmental law. For example, the case of <u>Jones v. Inmont</u>, 584 F.Supp. 1425 (S.D. Ohio 1984) for the first time allowed private citizens adversely affected by pollution the ability to obtain relief under CERCLA and under the Imminent Hazard provision of RCRA. The court's decision and order also introduced the concept of cost recovery for medical monitoring activities and led to the U.S. Congress legislatively adopting the imminent hazard provision as a direct part of the RCRA citizen suit provision.

20. I have also been lead counsel in many other cases that have led to innovative environmental and law enforcement relief. These include representing Neighbors Opposing Pit Expansion ("N.O.P.E.") in a dispute with the Cincinnati Gas & Electric Co. (resulting in a community-wide settlement of a fly ash disposal dispute in Pierce Township, Ohio); <u>Hopkins v. Elano Corporation, et al.</u>, Case No. C-3-88-0067 (S.D. Ohio 1988) (bringing relief to area residents with contaminated drinking water wells

6

and *obtaining citizen oversight* under a federal consent decree); Hertzler v. Vernay Laboratories, Case No. C-3-99-451 (S.D. Ohio 1999) (addressing widespread groundwater contamination as well as water and air pollution violations on behalf of neighboring residents); St. Bernard v. Phthalchem, Case No. C-1-89-618 (S.D. Ohio 1989) and State of Ohio and St. Bernard v. Phthalchem, Inc., Case No. A-8907973 (enforcing *Clean Air Act* violations and groundwater contamination and *granting direct oversight rights* to the City of St. Bernard); CF/Water v. Schregardus, et al., Case Nos. ERAC 123520, 123567, 113521, 113568 (March 8, 1996) (overturning Ohio EPA's permit decision for Danis' Clarkco Landfill on behalf of the community-based environmental organization); Buchholz v. Dayton International Airport, Case No. C-3-94-435 (S.D. Ohio 1994) (enforcing, via injunction, violations of the Clean Water Act on behalf of area residents); and Arnett, et al. v. Willard Industries, Case No. C-1-02-87 (S.D. Ohio 2002) (obtaining Consent Decree under the *Clean Air Act*, including citizen oversight, leading to the installation of equipment that air pollution testing demonstrates will yield an 80% reduction in volatile organic compound emissions); Barbara Fisher v. Perma-Fix of Dayton, Inc., Case No. 3:04 CV 0418 (S.D. Ohio 2004) (obtaining Consent Decree under the *Clean Air Act* in joint enforcement action with the United States Department of Justice and obtaining supplemental agreement providing for citizen oversight of implementation of that Consent Decree); United States of America, et al. v. Board of County Commissioners of Hamilton County, Ohio, et al., 1:02-cv-00107 (S.D. Ohio 2002) (efforts of citizen plaintiffs resulted in improvements to consent decrees, including a first of its kind Water-in-Basement Program); Sierra Club v. Board of County Commissioners of

Hamilton County, Ohio, 504 F.3d 634 (6th Cir. 2007) (finding that citizen plaintiffs who secure substantial benefits to the public are prevailing or substantially prevailing parties even though they were not parties to the consent decree that settled the case). In 1990, I served as co-lead class counsel in Nelson v. BASF Corporation, Case No. A9007577, obtaining class-wide relief including a medical evaluation program for class members.

21. Many of the aforementioned cases have provided for environmental cleanups that have required my firm to engage in the ongoing oversight of technical environmental and legal matters. For example, we have represented three Cincinnati neighborhoods that comprise the Citizens Concerned About Hilton Davis (CCHD) organization for the last 24 years in *monitoring and overseeing the clean-up* of the Hilton Davis site required pursuant to State of Ohio v. Sterling Drug, et al., Case No. A8608219 (Consent Order entered Oct. 20, 1986). We also engage in ongoing oversight in Hertzler v. Vernay Laboratories, Case No. C-3-99-451 (S.D. Ohio 1999) and Booth, et al. v. Georgia-Pacific Corporation, et al., Case No. 90CVC05-3535. Specifically, Booth was a class action arising from a plant explosion and Clean Air Act violations. The resolution of the case includes a "liaison program" that involves oversight by "special masters" who report to the court and the class. The resolution of Booth also includes a medical program to evaluate health problems, including environmentally-related health issues, of participating class members.

22. I also currently represent, and in the past have represented, numerous regional and national environmental organizations on a variety of environmental matters including: Sierra Club; Sierra Club (Ohio Chapter); Citizen Action of Ohio; Rivers

8

Unlimited; Ohio Public Interest Research Group; the City of Toledo, Ohio; the City of St. Bernard, Ohio; Portage County, Ohio Solid Waste District; Neighbors Opposed to Pit Expansion (N.O.P.E. – a 300 member community organization in Pierce Township, Ohio); and C/F. Water (Citizens for Water – a community organization in Springfield, Ohio). I was also one of the lawyers representing the Sierra Club in the case of <u>U.S. et al. v. AK Steel</u>, Case No. C-1-00530, where the Sierra Club is a co-plaintiff with the United States in a federal consent decree.

23. I am "AV" rated by Martindale Hubbell Law Directory, which is the highest rating denominated by that publication.

24. I have delivered over 100 lectures at legal and environmental seminars regarding civil environmental litigation, interpretation of environmental statutes, practice techniques, and legal ethics. For example, in the late 1980s, I was a lecturer at the Pennsylvania/New Jersey Trial Lawyers Boardwalk Seminar Series. The faculty included many of the top environmental litigators in the United States. In the 1980s, I also lectured on environmental topics to such organizations as the National League of Cities (Annual Meeting) and the Bureau of National Affairs lecture series. Other seminars in which I have participated include: ATLA/NJTL Seminar in 1987 and 1988; U.S. EPA Seminars in 1993; OATL Workshops from 1987 to 1993; Ohio State Bar Association Seminars in 1989, 1991, and a 2007 and 2009 presentation at the Ohio State Bar Association Environmental Law Seminar. My 2009 presentation was on citizen suits. I am scheduled to present at the 2010 Ohio State Bar Association Environmental Law Seminar. I also spoke at the Executive Enterprises Environmental Regulation Course from 1992 to 1994.

9

25. I have testified before the U.S. Congress and both houses of the Ohio legislature on environmental issues, including environmental secrecy and nuclear safety.

26. From 1981 to 2000, I was an adjunct professor at the University of Cincinnati teaching, during each Spring academic quarter, an undergraduate and graduate level environmental law course.

27. Among my many publications is the 1991 publication, <u>Local Health Agencies; The Silent Partners in the Environmental Enforcement Network</u>, 18 Northern Kentucky Law Review 213 (also published in the Spring 1992 edition of the *Ohio Trial Magazine*).

28. As a result of the experience described above, I have gained substantial knowledge and expertise in the investigation, litigation and settlement of complex environmental litigation, class action litigation, and community representation.

## *QUALIFICATIONS OF ASSOCIATES AND LAW FIRM PERSONNEL*

29. My associate Amy J. Leonard graduated cum laude from Tulane Law School in 1988, where she was the founding editor of the Tulane Environmental Law Journal. In 1986, she clerked at the Tennessee Department of Health and Environment and in 1987, she clerked for the Energy Law section of the State of Louisiana's Attorney General's office. Ms. Leonard joined my firm in 1988 where she has focused her practice on representing neighborhood groups, citizens, environmental organizations and local governments in their attempts to address pollution problems in their communities. Ms. Leonard was a member of the Cincinnati Environmental Advisory Council from 1993 to 1997 and chair of the Environmental Law section of the Ohio Academy of Trial Lawyers for two terms, from 1998 to 2000. She has published

*Environmental Secrecy in Ohio*, Ohio Trial Magazine, Spring, 1998 Vol. Issue 2, and recently authored an article for Tulane Environmental Law Journal, *The Rise of Neo-Scientists Advocating for Polluters and the Laws that Deter Them*, Summer, 2007, Vol. 20, Issue 2.

30. Brett A. Kravitz has been employed as an associate at my firm since August 2007. Since joining my firm, Mr. Kravitz has worked exclusively on complex environmental litigation. Prior to joining my firm, Mr. Kravitz practiced environmental law with the Ohio Attorney General's Office for nearly 8 years, including as a Solid and Infectious Waste Supervisor. He also handled well over a 100 air cases (permitting and enforcement cases) while at the Ohio Attorney General's Office. Among other environmental cases, Mr. Kravitz was lead counsel in State ex rel. Petro v. Mercomp, Inc. (2006) 167 Ohio App.3d 64 (Ohio App. 8th Dist.) and State ex rel. Petro v. Mid-Ohio Petroleum Co., 2005-Ohio 6271 (12th App. Dist). Additionally, he was a speaker for the Ohio State Bar Association Environmental Law Seminar in April 2006. He spoke on the "Saving Your Assets" panel discussing environmental liability issues for individuals. Mr. Kravitz has played a central role throughout this case.

31. My associate Justin D. Newman has been employed by my firm as an attorney since November 2006 and has worked exclusively on complex environmental litigation. During all three years of law school, Mr. Newman worked at my office as a law clerk and gained extensive experience in environmental litigation. Mr. Newman graduated summa cum laude from Wilmington College in 2003 and, in 2006, graduated magna cum laude from the University of Cincinnati College of Law, where he was also

elected to the Order of the Coif. He is admitted to practice in Ohio and before the United States District Court for the Southern District of Ohio and the United States District Court for the Northern District of Ohio. He has particular knowledge and experience in citizen suit litigation and has played a central role in the litigation throughout this case.

32. My associate Amy M. Hartford has been employed by my firm since May 2003 and has worked exclusively on complex environmental litigation. She was involved with important aspects of this case. Ms. Hartford graduated from Northland College and, in 2001, from Vermont Law School. She graduated magna cum laude from Northland College with a major in Sociopolitical Environmental Studies. At Vermont Law School, in addition to earning her J.D., Ms. Hartford graduated cum laude with a Masters of Studies in Environmental Law and served as an editor for the school's environmental law journal. While at Vermont Law School, Ms. Hartford clerked for the Environment and Natural Resources Division of the U.S. Department of Justice. She is admitted to practice in Ohio, the United States District Court for the Southern District of Ohio, and the United States Court of Appeals for the Sixth Circuit. She has particular knowledge and experience in citizen suit fee litigation.

33. Elaine K. Lutz is an associate employed by my firm since November 2009. She is admitted to practice law in Maryland and will sit for the Ohio bar examination in July 2010. Ms. Lutz graduated cum laude from Miami University in 2006, and graduated cum laude from University of Maryland School of Law in 2009. She has experience in environmental law from her employment with the Chesapeake Bay Foundation and the Maryland Department of Natural Resources. Ms. Lutz focused on

environmental law courses during law school, receiving a certificate of environmental law studies from the University of Maryland's environmental law program.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this the 19th day of March, 2010

_____

D. David Altman

13

# Attachment A

**Sierra Club, et al. v. Christopher Korleski, Director of Ohio EPA**
**CASE NO. 2:08-cv-865**
**SUMMARY OF TIME RECORDS**

**1/1/08-3/31/08**

Review federal statute re: SIP submittal criteria and deficient compliance by Ohio;
Update SIP submittal information, internal conferences re same;
Review SIP and air toxics issues;
Draft and review memo re: same;
Internal communications re: SIP issues and Ohio's apparent federal violations.

**4/1/08-4/30/08**

Review mootness issue;
Attorney conferences re: scope of violations and strategy
Research detailed SIP revision requirements;
Internal conferences re timing of federal notice issues and related issues;
Review SIP issues for preliminary draft federal notice letter (Notice).

**5/1/08-5/31/08**

Review SIP issues;
Client communications re: Notice and possible federal action;
Draft letter re: same;
Internal office conference re: Notice filing;
Attorney conferences re: Notice strategy;
Begin drafting Notice;
Telephone conference clients re: Notice issues and facts;
Research additional CAA violations, continue to draft Notice;
Client communications re: citizen suit;
Review standing and procedural regulations, communications with clients re fact gathering;
Communications with regional Ohio agencies re: exempt sources and related facts;
Internal conferences re: draft Notice;
Communications with outside counsel re: Notice issues;
Consult with internal air expert re: same;
Forward draft Notice to counsel for review and comment;
Calls to regional Ohio air agencies re: BAT exemption and related facts;
Research re: NAAQS and non-attainment areas;

1

Review federal regulations re: NSR;
Internal Notice review and incorporate comments;
Review timing of Notice filing;
Meetings with clients re: draft Notice;
Meeting with clients re: Notice questions;
Internal meetings re: additional Notice questions, add additional individuals to Notice;
Communications with client's in-house counsel re: status of Notice and related issues,
Internal conferences re: status of Notice and Notice standards;
Communications re: status of Ohio SIP;
Communications with clients re: approval of Notice, review draft Notice, cite check
      same;
Internal conferences re: Notice and related issues;
Communications with OAG re: Notice issues;
Internal review of US EPA response to Ohio submittal;
Internal conferences re Notice comments and revisions.

**6/1/08**

Review emails re: US EPA action on Ohio submittal;
Communications with clients re: same;
Internal review of Region V letter to OEPA;
Mail Notice to all required;
Internal conferences with attorneys/staff re: Notice;
Respond to media contacts re: Notice.

**7/1/08**

Communications with clients re: BAT, Notice, inter-office communication re: same;
Calls re: Notice return receipt issues;
Internal conferences re: same;
Calls with OAG re: meeting;
Begin to draft federal complaint (Complaint);
Internal meetings re: OEPA/OAG meeting;
Office conferences re: Complaint strategy.

**8/1/08**

Continue to draft Complaint;
Draft language for communication with OAG;
Internal review of draft Complaint;

2

Further staff review and revision of draft Complaint;
Further reviews to same;
Review key case; review Complaint in light of key case;
Phone call OAG re: meeting issues;
Prepare for meeting, review exemption date;
Communications with clients re: Notice;
Review client contact information;
Communications with clients re: Complaint and fact gathering;
Draft memo re: meeting issues;
Brief staff re: OEPA meeting;
Review venue issue;
Internal attorney conference re: same;
Review regulations re: "modifications";
Communications with clients re review of draft Complaint;
Review Director's duties;
Continue preparation for meeting;
Staff conference re: pre-filing meeting in Columbus;
Drive to Columbus;
Meeting with OAG & OEPA re: violations of federal law;
Consider withdrawal of regulation as settlement option;
Drive to Cincinnati;
Phone call with client's in-house counsel re: pre-filing information;
Review and revise case form.

**9/1/08**

Client filing approval granted;
Office conference with staff re: filing approval;
Internal conferences re: declaratory judgment issues;
Internal conferences re filing issues;
Revise Complaint, review and research SIP cases;
Continue Complaint review and revision;
Cite check same;
Review 6th Circuit decision;
Confirm facts;
Review service issues, call clients re: filing issues;
Provide notification of filing to interested persons;
Memo re: case issues;
Email Complaint to OAG;
Verify names for service.

**10/1/08**

Communications with U.S. EPA re: service issues;
Return of summons issues;
Review standing issues;
Review files for hot documents in federal cases;
Review admissibility of Requests for Admissions (RFAs) and interrogatories in federal
       case, review SIP change issues.

**11/1/08**

Review Ohio Answer and Motion to Dismiss (MTD);
Internal conferences re: same;
Review admissions and denials from administrative action;
Review cases cited by Ohio;
Communication with clients re: Ohio filing;
Review SIP issues, draft memo re: same;
Outline MTD arguments;
Review CAA duty and deadline obligations;
Draft outline response to MTD;
Internal conferences re: MTD issues and outline;

**12/1/08**

Continue MTD research, review, internal conferences re same;
Internal attorney meetings re: MTD Response;
Identify areas of research needed, review draft facts memo for MTD Response, Civil R.8,
and judicial notice;
Draft and review memos re: same;
Draft MTD Response;
Review SIP-related cases;
Review CAA legislative history;
Fact check and cite check brief;
Revise draft MTD Response;
Internal conferences re: status of Motion for Summary Judgment (MSJ) and MTD issues.

For the period 1/1/08 through 12/31/08 the net attorney fees (at the reduced rates in this case) were $104,713.79 as noted below:

**JANUARY 1, 2008 – DECEMBER 31, 2008**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|---|---|---|---|
| DDA | $420.00 | 42.11 | $ 17,688.99 |
| BK | $300.00 | 158.83 | $ 47,631.40 |
| JDN | $210.00 | 134.46 | $ 28,230.62 |
| AJL | $350.00 | 6.48 | $  2,268.00 |
| AMH | $275.00 | 32.03 | $  8,810.23 |
| SKL | $110.00 | .74 | $      80.66 |
| | **TOTAL** | 374.65 | $104,713.79 |

**1/1/09 – 1/31/09**

      Review 26(f) report requests, attorney comments re: same,
      Communications with OAG re: same;
      Attorney communication with experts re: case;
      Attorney conferences re: 26(f) meeting;
      Internal/external communications re: scheduling 26(f) meeting;
      Review issues for 26(f) conference; attorney conferences re: same;
      Review MTD reply;
      Draft 26(f) report and litigation schedule;
      Review and revise 26(f) plan;
      Review and revise MTD Response;
      Attorney conferences re: case strategy;
      Communications with outside counsel re: case information;
      Review affirmative defenses;
      Attend 26(f) conference via telephone;
      Follow-up attorney conference re: same;
      Attorney conferences re: report revisions;
      Communications with OAG re: same;
      Secure Ohio's consent to Magistrate Judge Abel;
      Review revised MTD reply;
      Communications re: dispute resolution plan;
      Review CAA penalty issues;
      Communication with OAG re: 26(f) report; revise same;
      Negotiate report agreement;
      Draft discovery requests to state;
      Review Ohio's prior discovery responses; memo re: same;
      Review MSJ issues;
      Research RFA issues; attorney conferences re: same;
      Prepare exhibits to RFAs;
      Revise discovery requests; attorney conferences re: same;
      Prepare for pretrial conference;
      Drive to Columbus; pretrial conference; return to Cincinnati;
      Draft internal memo re: pretrial; draft communication to clients re: same;
      Attorney conferences re: initial disclosure issues;
      Prepare document preservation letter;
      Attorney conferences re: MSJ outline, disclosures, and letter to OAG
      Attorney conferences re: injunctive relief and case law;
      Review document destruction issues and letter to OAG;
      Attorney conferences re: initial disclosures;
      Review memos re: injunctive relief and case law; attorney conferences re: same;

Document review and draft initial disclosures;
Research *Vaughn* index issues;
Research OEPA documents from Director's office;
Research privilege log issues; attorney conferences re: same;
Attorney conference re: U.S. EPA update;
Attorney conference re: declaratory relief;
Conferences re: consultant cost approval;
Review Ohio's disclosure statement;
Review Ohio's BAT documents, communicate with OAG re: same; memo re: same;
Review preliminary pretrial order;
Draft discovery responses; review documents re:  same.

**2/1/09 – 2/28/09**

Continue to draft discovery;
Communications with OAG re: discovery issues;
Continue to review BAT document issues;
Client communications re: SIP issues; review OEPA website re: same;
Attorney conferences re: discovery extension;
Review ozone rule changes and BAT exemption;
Communications with OAG re: RFAs and attorney communications re: same;
Schedule document review and review privilege log;
Further review of documents request responses:
Attorney conference re: Ohio's privilege log and summary judgment issues;
Research RFA issues; attorney conferences re: same;
ID Ohio discovery response deficiencies; draft letter to OAG re: same;
Attorney conferences re: discovery;
Research BAT avoidance issues;
Review law and revise OAG discovery deficiency letter;
Client communications re: discovery responses;
Review Court ruling on MTD; client communications re: same;
Attorney conferences re: same;
Continue review of BAT avoidance issues; staff conferences re: same;
Review and revise discovery responses; attorney conferences re: same;
ID and review documents that support MSJ;
Finalize discovery responses;
Review amended complaint issues;
Attorney conference re: MSJ outline and witness list;
Communications with OAG re: discovery letters; attorney conferences re: same;
Respond to Ohio discovery letter;
Draft 2nd discovery request set; prepare witness list;

Communications with OAG re: revised document requests, witness disclosures;
Further research on health impacts;
Research MSJ case law; draft Motion for Partial Summary Judgment
Research regional technology rules; attorney conferences re: same;
Cite check MSJ;

**3/1/09-3/31/09**

Review SIP and Ohio discovery responses for MSJ;
Revise draft MSJ;
Research NAAQS impacts issues and Congressional Record;
Review update on BAT exclusions;
Continue to draft MSJ; attorney conferences re: same;
Prepare documents for depositions; prepare for depositions, if needed;
Prepare exhibits for MSJ; attorney conferences re: same;
Review SIP violations cases;
Continue to communicate with OAG re: discovery issues; attorney conferences re:
        continuing discovery problems;
Draft further discovery deficiency letter to OAG;
Attorney conferences re: MSJ issues and injunction;
Communications re: discovery dispute with Ohio; communications with Ohio re: need to
        call Magistrate Judge Abel;
File MSJ on Count I;
Client communications re: deposition preparation and MSJ filing;
Review standing issues; research same;
Obtain supplemental declaration re: standing; client communications re: same;
Draft standing checklist; communications re: facts for declaration;
Prepare for discovery communications with OAG;
Communications with OAG re: settlement and stipulations on declaration filing;
Review standing issues in other Ohio counties;
Client communications re: individual declarations;
Draft standing memo; motion to supplement record;
Draft Ohio deposition notices;
Draft proposed order to supplement record and give Ohio additional time to respond;
Draft notice of filing declarations; attorney conferences re: same;
Communications with OAG re: depositions, notices and related issues;
Continue deposition preparation and attorney conferences re: strategy;
Letter to OAG re: deposition scheduling;
Review supplemented discovery and revised log from OAG; attorney conferences re:
        discovery issues;
Continue witness deposition preparation, scheduling;

Review and revise letter to OAG re: outstanding discovery; attorney conferences re: same;

Communications with OAG re: discovery issues, deposition schedules;

Review Ohio supplemental discovery;

Attorney conferences re: Ohio supplemental discovery response;

Communications with OAG re: agreement on depositions;

Prepare for 30(b)(6) deposition; attorney conferences re: same;

Review further Ohio discovery supplementation and deficiencies; attorney conferences re: same;

Communications with litigation consultant, produce documents to same;

Update list of exempted sources;

Draft memo re: outstanding discovery; attorney conferences re: same;

For the period 1/1/09 through 3/31/09 the net attorney fees (at the reduced rates in this case) were $155,655.20, as noted below:

**FIRST QUARTER 2009: JANUARY 1, 2009 – MARCH 31, 2009**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|----------|------|-------|-----------|
| DDA | $420.00 | 73.67 | $ 30,938.28 |
| BK | $300.00 | 294.14 | $ 88,243.31 |
| JDN | $210.00 | 160.52 | $ 33,708.96 |
| AJL | $350.00 | -0- | -0- |
| AMH | $275.00 | -0- | -0- |
| SKL | $110.00 | 25.15 | $ 2,764.65 |
| **TOTAL** | | 553.48 | $155,655.20 |

Total fees for 1/1/08 through 3/31/09 were $260,368.99:

**TOTAL FEES TO-DATE: (3/31/09)**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|----------|------|-------|-----------|
| DDA | $420.00 | 115.78 | $ 48,627.27 |
| BK | $300.00 | 452.97 | $135,874.71 |
| JDN | $210.00 | 294.98 | $ 61,939.58 |
| AJL | $350.00 | 6.48 | $ 2,271.89 |
| AMH | $275.00 | 32.03 | $ 8,810.23 |
| SKL | $110.00 | 25.89 | $ 2,845.31 |
| **TOTAL** | | 928.13 | $260,368.99 |

**4/1/09 – 4/30/09**

      Research air quality issues for key Ohio areas;
Attorney conferences re: same;
Review outstanding discovery issues; attorney conferences re: same:
Review OEPA/industry communications and related discovery request;
Review endangerment finding;
Review BAT amicus issues and research;
Draft supplemental discovery responses;
Communications with OAG re: discovery deficiencies and update privilege log;
Review new NAAQS and BAT documents; attorney conferences re: same;
Review and comment on amicus filing; attorney conferences re: same;
Review Ohio response to MSJ; attorney conferences re: same;
Draft reply to amicus;
Draft reply to Ohio MSJ response;
Continue exempt permit research;
Client communications re: discovery issues;
Review source location/standing issues;
Communications with expert re: standing issues;
Communications with Region V re: no SIP resubmittal by OEPA;
Review Ohio affidavits attached to MSJ response;
Communications with additional declarants re: standing facts;
Prepare draft MSJ reply; attorney conferences re: same;
Locate exempted BAT sources; prepare chart;
Prepare stipulation re: records;
Research Cleveland and Franklin County area permits and BAT avoidance;
Review supplemental declarations and communications with declarants re: same;
Finalize supplemental declarations;
Review and cite check reply;
Integrate declarations into reply;
Prepare motion to reconsider industry amicus in light of discovery disclosures;
Prepare declarations re: map preparation;
Communications with OAG re: expert deadline; prepare joint motion to extend same;
Prepare additional exhibits for reply brief;
File MSJ Reply;

**5/1/09 – 5/31/09**

      Status conference with court; attorney conferences re: same;
Attorney communications re: mediation order;

Review case management deadline;
Review motion to reconsider opposition; reply to same;
File amicus reply;
Research permit applications for under 10 ton sources;
Review OAG memo opposing motion to reconsider; research cases;
Attorney communications re: same;
Review outstanding Ohio discovery issues;
File reply to amicus;

**6/1/09 – 6/30/09**

Review order denying reconsideration and granting leave to reply;
Prepare reply to Amicus; review case law re: same;
File reply;
Review substitution of counsel;
Communications with OAG re: same;
Communications with OAG re: expert deadline extension;
Review discovery deficiency letter to OAG; communications with OAG re: same and
discovery conference;

For the period 4/1/09 through 6/30/09 the net attorney fees (at the reduced rates in this case)
were $94,729.44, as noted below:

**SECOND QUARTER 2009:   APRIL 1, 2009 – JUNE 30, 2009**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|---|---|---|---|
| DDA | $420.00 | 37.02 | $15,558.10 |
| BK | $300.00 | 124.91 | $37,474.14 |
| JDN | $210.00 | 184.38 | $38,712.52 |
| AJL | $350.00 | -- | -- |
| AMH | $275.00 | -- | -- |
| SKL | $110.00 | 27.12 | $ 2,984.68 |
| | **TOTAL** | 373.43 | $94,729.44 |

11

The total fees for 1/1/08 through 6/30/09 were $355,098.43:

**TOTAL FEES TO-DATE: (6/30/09)**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|---|---|---|---|
| DDA | $420.00 | 152.80 | $ 64,185.37 |
| BK | $300.00 | 577.88 | $173,348.85 |
| JDN | $210.00 | 479.36 | $100,652.10 |
| AJL | $350.00 | 6.48 | $ 2,271.89 |
| AMH | $275.00 | 32.03 | $ 8,810.23 |
| SKL | $110.00 | 53.01 | $ 5,829.99 |
| | **TOTAL** | 1,301.56 | $355,098.43 |

12

**7/1/09 – 7/31/09**

> Attorney communications re: discovery conference; memo re: same;
> Attorney communications with expert re: report;
> Client communications re: Hamilton County air quality issues;
> Communications with OAG re: fee/cost update;
> Review documents to identify additional areas of expert opinion;
> Attorney conferences re: same;
> Attorney conferences re: case status;
> Identify documents to send to consultant;
> Communications with OAG re discovery issues;
> Review SIP developments, attorney conferences re: same;
> Communications with clients re: related BAT issues;
> Review communications from OAG;
> Review ozone monitoring issues;
> Draft communications with OAG re: discovery issues; review related memos;
> Attorney conferences re: expert report issues;
> Finalize discovery communication to OAG; send same;
> Review MSJ ruling; communications with client re: same;
> Attorney conferences re: MSJ ruling;
> Send ruling to interested parties;
> Attorney conference re: MSJ reconsideration (MTR) issues;
> Attorney conferences re: task outline for MTR;
> Research MTR issues;
> Notify U.S. EPA of decision;
> Review key 6th Circuit case re: state as violator;

**8/1/09 – 8/31/09**

> Continue to research statute and cases for MTR;
> Preliminary draft of MTR;
> Review documents for consultant;
> Communications with OAG re: scheduling phone conference;
> Communications with consultant re: deadline issues;
> Communications re: MTR strategy and status conference;
> Communications to/from OAG re: expert deadline and status conference;
> Research anti-back sliding issues;
> Review draft MTR; attorney conferences re: same;
> Communications with interested parties re: MSJ ruling and MTR;
> Review U.S. EPA citizen enforceability evidence, including Federal Register notices;

Attorney conference re: status of MTR;
Communications with Court to confirm status conference;
Prepare for status conference; attend same by telephone;
Communications with OAG re: same;
Communications with client re: approval for MTD;
Communications with OAG re: MTD issues;
Review Order;
Communications with client re: approval of dismissal issues;

**9/1/09 – 9/30/09**

Research partial voluntary dismissal of a complaint;
File motion to voluntarily dismiss pending MTR;
Continue to research and draft MTR;
Attorney conferences re: need for status conference and MTR;
Review potential amicus issues;
Research old DOJ CAA briefs;
Research SIP changes and ozone restrictions;
Draft motion for deadline extension;
Communications with OAG re: same; file joint motion;
Prepare exhibits for MTR and cite check same;
Communications with clients re: filing of MTR; file MTR;
Review Ohio's MTD;
Preliminary draft response to Ohio's MTD;

For the period 6/1/09 through 9/30/09 the net attorney fees (at the reduced rates in this case) were $57,400.64, see box:

**THIRD QUARTER 2009:   JUNE 1, 2009 – SEPTEMBER 30, 2009**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|----------|------|-------|------------|
| DDA | $420.00 | 31.11 | $13,079.97 |
| BK | $300.00 | 41.97 | $12,578.07 |
| JDN | $210.00 | 142.82 | $29,986.06 |
| AJL | $350.00 | -- | -- |
| AMH | $275.00 | -- | -- |
| SKL | $110.00 | 3.25 | $    358.27 |
| NWS | $  90.00 | 15.53 | $ 1,398.27 |
| **TOTAL** | | 234.68 | $57,400.64 |

14

The total fees for 1/1/08 through 9/30/09 were $412,499.37:

**TOTAL FEES TO-DATE:   (9/30/09)**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|---|---|---|---|
| DDA | $420.00 | 183.91 | $  77,265.34 |
| BK | $300.00 | 619.85 | $185,926.92 |
| JDN | $210.00 | 622.18 | $130,638.16 |
| AJL | $350.00 | 6.48 | $   2,271.89 |
| AMH | $275.00 | 32.03 | $   8,810.23 |
| SKL | $110.00 | 56.26 | $   6,188.56 |
| NWS | $  90.00 | 15.53 | $   1,398.27 |
| | | **TOTAL** 1,536.24 | $412,499.37 |

15

**10/1/09 – 10/31/09**

     Revise opposition to Director's second MTD;
     Attorney conferences re: MTD Opposition;
     Review filings related to Director's MTD;
     Review State's response to Plaintiffs' Voluntary Motion to Dismiss without prejudice;
     Cite check Opposition to Director's MTD;
     Communication to OAG re: attorneys' fees update;
     Review reply brief filed by Director;
     Review Opposition to MTR filed by Industry;
     Draft reply in support of Voluntary MTD;
     Attorney conference re: Industry Opposition to MTR;
     Attorney conferences re: Reply in Support of Voluntary MTD;
     Attorney conferences re: Opposition to Director's MTD;
     Review State's Opposition to MTR;
     Research for Reply in Support of MTR;
     Review cases cited by Director in Opposition to MTR;
     Draft Reply in Support of MTR to Industry Opposition;
     Research for Reply in support of MTR;
     Research re: administrative deference;
     Draft administrative deference section for Reply to Director's Opposition to MTR;
     Cite check reply to Industry Opposition to MTR;
     Review 6th Circuit SIP decision;
     Attorney conferences re: Replies in support of MTR;
     Draft and revise Reply to Director's Opposition to MTR;

**November 2009 – no services performed**

**12/1/09 – 12/31/09**

     Communications with OAG re: extension of expert report deadline;
     Communication with Court re: extension of expert report deadline;
     Draft and revise Motion to Extend Expert Report Deadlines and Proposed Order;
     Communications with OAG re authorization to file Motion to Extend;
     Communications with client re: case status;

For the period 10/1/09 through 12/31/09 the net attorney fees (at the reduced rates in this case) were $31,950.51, see box as noted below:

**FOURTH QUARTER 2009:   OCTOBER 1, 2009 – DECEMBER 31, 2009**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|----------|------|-------|-----------|
| DDA | $420.00 | 14.06 | $ 5,904.03 |
| BK | $300.00 | 21.00 | $ 6,298.08 |
| JDN | $210.00 | 88.02 | $18,484.94 |
| AJL | $350.00 | 2.33 | $   816.67 |
| AMH | $275.00 | -- | -- |
| SKL | $110.00 | -- | -- |
| NWS | $ 90.00 | 4.97 | $   446.79 |
| **TOTAL** | | 130.38 | $31,950.51 |

The total fees for 1/1/08 through 12/31/09 were $444,449.88:

**TOTAL FEES TO-DATE:   (12/31/09)**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|----------|------|-------|-----------|
| DDA | $420.00 | 197.97 | $83,169.37 |
| BK | $300.00 | 640.85 | $192,225.00 |
| JDN | $210.00 | 710.20 | $149,123.10 |
| AJL | $350.00 | 8.81 | $3,088.56 |
| AMH | $275.00 | 32.03 | $8,810.23 |
| SKL | $110.00 | 56.26 | $6,188.56 |
| NWS | $ 90.00 | 20.50 | $1,845.06 |
| **TOTAL** | | 1,666.62 | $444,449.88 |

17

**1/1/10 – 1/31/10**

      Research developments with BAT;
      Research NAAQS developments for effect on case;
      Communications with clients re: case status;

**2/1/10 – 2/28/10**

      Review 2/2/10 Order;
      Internal attorney conferences re: 2/2/10 Order;
      Communications with clients re: 2/2/10 Order;
      Communications with media about 2/2/10 Order;
      Research Rule 54 issues;
      Review Director's Motion to Rule on Plaintiffs' Motion to Voluntarily Dismiss;
            communications with clients re: same;
      Research issues implicated by potential appeal;
      Communications with OAG re: potential status conference;
      Communications with Court/OAG re: potential status conference;
      Communications with Court/OAG re: rule 54/appeal issues;
      Review Ohio EPA memo re: 2/2/10 Order;
      Communications with OAG re: compliance with Court's 2/2/10 Order and back-sliding;

**3/1/10 – 3/18/10**

      Communications with OAG re: proposed appealability orders;
      Research issues relating to potential appeal by Director;
      Communications with Court and OAG re: discovery on Claim 2 and compliance with
            2/2/10 Order;
      Attorney conferences re: discovery requests due to Director by 3/9/10;
      Research for fee petition;
      Communications with media re: Director's appeal to 6th Circuit;
      Review materials to draft discovery requests to Director;
      Attorney conferences re: discovery requests;
      Draft and revise discovery requests to Director and serve same;
      Draft and revise fee petition;
      Attorney conferences re: fee petition;
      Prepare time summary for fee petition;

**FIRST QUARTER 2010:   JANUARY 1, 2010 THROUGH MARCH 18, 2010**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|----------|------|-------|------------|
| DDA | $420.00 | 21.81 | $ 9,152.27 |
| BK | $300.00 | 22.80 | $ 6,837.66 |
| JDN | $210.00 | 60.42 | $12,686.99 |
| AJL | $350.00 | .91 | $    319.09 |
| AMH | $275.00 | -- | -- |
| SKL | $110.00 | 3.63 | $    399.88 |
| NWS | $  90.00 | 14.70 | $ 1,323.54 |
| EKL | $125.00 | 26.64 | $ 3,329.55 |
| **TOTAL** | | 150.91 | $34,048.98 |

The total fees for 1/1/08 through 3/18/10 were $478.498.86:

**TOTAL FEES TO-DATE:   (3/18/10)**

| ATTORNEY | RATE | HOURS | TOTAL FEES |
|----------|------|-------|------------|
| DDA | $420.00 | 219.78 | $ 92,321.64 |
| BK | $300.00 | 663.65 | $199,062.66 |
| JDN | $210.00 | 770.62 | $161,810.09 |
| AJL | $350.00 | 9.72 | $   3,407.65 |
| AMH | $275.00 | 32.03 | $   8,810.23 |
| SKL | $110.00 | 59.89 | $   6,588.44 |
| NWS | $  90.00 | 35.20 | $   3,168.60 |
| EKL | $125.00 | 26.64 | $   3,329.55 |
| **TOTAL** | | 1,817.53 | $478.498.86 |

19

# Attachment B

**Sierra Club, et al. v. Christopher Korleski, Director of Ohio EPA**

**CASE NO. 2:08-cv-865**

**LITIGATION EXPENSES SOUGHT THROUGH 3/18/2010**

| ITEM | COST |
|---|---|
| Copy charges | $  1,411.38 |
| Long distance charges | $    20.08 |
| PACER | $    75.04 |
| Postage | $   453.92 |
| Print pages | $   749.95 |
| UPS | $    91.94 |
| Westlaw | $  3,279.22 |
| **TOTAL** | **$  6,081.53** |